## SCOTT v ILLINOIS TOOL WORKS, INC

Docket No. 170249. Submitted December 20, 1995, at Lansing. Decided May 31, 1996, at 9:15 A.M. Leave to appeal sought.

Dick and Vada Scott brought an action in the Washtenaw Circuit Court against Illinois Tool Works, Inc., and Signode Supply Corporation, seeking damages for injuries suffered by Dick Scott when a strap manufactured and sold by the defendants broke as he was tightening it around a load. The jury returned a verdict for Dick Scott, finding not only past damages, but also specially finding lost wages for each year until Dick Scott reached age seventy-three, his life expectancy at the time of the trial. The trial court, Patrick J. Conlin, J., after reducing the jury's award of future damages to a present value using a compound discount method, entered a judgment on the verdict and subsequently denied the defendants' motion for a judgment notwithstanding the verdict, a new trial, or remittitur. The defendants appealed, and the plaintiffs cross appealed.

The Court of Appeals *held*:

1. The trial court properly permitted the jury to consider whether the initial injury to Dick Scott's wrist was causally related to the eventual wrist fusion that resulted in a permanent disability. Although the evidence with respect to whether the eventual wrist fusion was causally related to the injury suffered during the accident was weak, when viewed in the light most favorable to the plaintiffs, it was marginally sufficient to permit the question of causation to be sent to the jury.

2. Although there was a difference of opinion by the expert witnesses concerning whether the initial injury could have been caused in the manner claimed by the plaintiffs, there is nothing in the record to show that the witness supporting the plaintiffs' theory of causation was so lacking in credibility that the trial court erred in refusing to grant a new trial on the basis that the plaintiffs' theory of causation was against the overwhelming weight of the evidence.

3. There was sufficient evidence for the jury to find that there had been an express warranty that the strap would have an average breaking strength of eight hundred pounds and that the average

breaking strength of the strap supplied by the defendants had an average breaking strength of less than eight hundred pounds. Accordingly, the trial court properly allowed the questions of the express warranty and the breaking strength to go to the jury.

4. The failure of the defendants to object to the trial court's instruction that Dick Scott had a life expectancy of seventy-three, coupled with their failure to present any evidence with respect to damages, precludes them from raising as error the fact that the jury awarded future damages for lost wages for each year until Dick Scott would reach the age of seventy-three.

5. The trial court properly refused to grant remittitur based on the evidence of Dick Scott's poor work record, inasmuch as there was ample evidence to support the jury's award of future damages for lost wages.

6. Although the trial court properly used a compound discount rate, rather than a simple discount rate, to reduce the award of future damages, the case must be remanded for modification of the judgment to correct a clerical error in the application of the compound discount rate.

Affirmed, but remanded for correction of clerical error.

W. J. Gɪᴏᴠᴀɴ, J., concurring in part and dissenting in part, stated that the trial court should have granted remittitur with respect to the damages awarded for lost wages for the years that Dick Scott would be sixty-six through seventy-three years old, because the plaintiffs had the burden of establishing that there would be employment and wages beyond the normal retirement age of sixty-five years old and they failed to do so.

1. Dᴀᴍᴀɢᴇs — Fᴜᴛᴜʀᴇ Dᴀᴍᴀɢᴇs — Wᴀɢᴇ Lᴏss — Lɪꜰᴇ Exᴘᴇᴄᴛᴀɴᴄʏ— Pʀᴇ-sᴇʀᴠɪɴɢ Qᴜᴇsᴛɪᴏɴ.

The failure of a defendant to object to a trial court's instruction concerning a plaintiff's life expectancy, when coupled with the defendant's failure to offer any proof that the plaintiff will not work beyond the normal retirement age of sixty-five years old, precludes the defendant from thereafter seeking relief where the jury awards wage-loss damages for the years between the year in which the plaintiff would reach the age of sixty-five and the year in which the plaintiff would reach the age of life expectancy.

2. Dᴀᴍᴀɢᴇs — Fᴜᴛᴜʀᴇ Dᴀᴍᴀɢᴇs — Pʀᴇsᴇɴᴛ Vᴀʟᴜᴇ — Cᴏᴍᴘᴏᴜɴᴅ Dɪsᴄᴏᴜɴᴛ Rᴀᴛᴇ.

A compound discount rate, rather than a simple discount rate, is used in reducing future economic and noneconomic damages to present value pursuant to MCL 600.6306(2); MSA 27A.6306(2).

*Logeman & Associates, P.C.* (by *Robert E. Logeman*), for the plaintiffs.

*Conlin, McKenney & Philbrick, P.C.* (by *Allen J. Philbrick*) and *Mayer, Brown & Platt* (by *Lawrence S. Robbins* and *Donald M. Falk*), for the defendants.

Before: O'CONNELL, P.J., and SAAD and W. J. GIOVAN,[*] JJ.

SAAD, J. Defendants appeal the $1,016,732.92 judgment entered in favor of plaintiff, Dick Scott[1] following a jury verdict. Plaintiff cross appeals from the court's calculation of the present value of the portion of the judgment representing future damages. We affirm the jury verdict in favor of plaintiff and remand for the limited purpose of correcting a clerical error in the judgment.

Plaintiff, a quality control inspector for intervening plaintiff Motor Wheel Corporation, was injured when a polyester strap manufactured and sold by defendants broke while he was tightening it around a palletized load of parts. Plaintiff alleged negligence, as well as breach of both express warranty and implied warranty. After a seven-day trial, the jury, on the general verdict form, returned a verdict for plaintiff.. The court reduced the jury's award of future damages to present value, using a compound discount method. Following entry of the judgment, defendants moved alternatively for a judgment notwithstanding the ver-

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

[1] No award was made to Vada Scott, whose claim was apparently derivative only. Accordingly, we will speak in terms of a single plaintiff, Dick Scott.

dict (JNOV), a new trial, or remittitur. The lower court denied defendants' motions, and this appeal followed.

I

Defendants first assert that the trial court erred in permitting this case to go to the jury because, according to defendants, there was insufficient evidence of a causal relationship between the initial injury and the eventual wrist fusion (which resulted in permanent disability). Defendants contend that plaintiff's case should not have been submitted to the jury because the law requires more than mere speculation or conjecture regarding causation. Here, defendants insist that the best evidence plaintiff could produce concerning causation was, indeed, mere conjecture and speculation. In support of this argument, defendants rely heavily upon plaintiff's own treating physician, who was, at best, equivocal in his testimony de bene esse about what *caused* the wrist condition that ultimately required the wrist fusion. In particular, although Dr. Raymond C. Noellert testified that the accident caused an initial fracture of plaintiff's wrist, he admitted being "less certain" that the subsequent two problems with plaintiff's wrist (the Kienbock's disease and the ligament rupture) were caused by the accident.

However, according to Dr. Noellert, after plaintiff's fracture should have healed, plaintiff continued to experience pain:

> [A]fter that point, we started treating him certainly eventually for all three of these, whether he in fact sustained a scaphoid fracture alone, or in combination with the ligament rupture or a bone alone, or in combination with some future damage that occurred to an area of the lunate that

may or may not have been present at that time is specula-
tion, as far as I'm concerned, on everybody's part. No one is
ever going to have a definite answer on those questions.

   I guess I would also think that if he did have a scaphoid
fracture, and if that indeed were the only thing that was the
result of the injury, that once it was healed, he should have
returned to his original condition. And he did not. So that
leads me to believe that somehow the ligament rupture was
present in part [on the date of the accident], and was com-
pletely ripped, or that somehow his Kienbock's disease may
have been present in part, and may have been aggravated
by the accident; but that somehow that traumatic event was
significant, you know, in causing or worsening those condi-
tions such that he did not get better after treatment from
the scaphoid fracture. Does anyone really know for sure?
No.

When reviewing a trial court's failure to grant a
defendant's motion for a JNOV, testimony and all legiti-
mate inferences therefrom are examined in the light
most favorable to the plaintiff. *Thorin v Bloomfield
Hills Bd of Ed*, 203 Mich App 692, 696; 513 NW2d 230
(1994). On the other hand, as stated in *Mulholland v
DEC Int'l Corp*, 432 Mich 395, 416-417, n 18; 443
NW2d 340 (1989), quoting Prosser & Keeton, Torts
(5th ed), § 41, p 269:

   "The plaintiff must introduce evidence which affords a
   reasonable basis for the conclusion that it is more likely
   than not that the conduct of the defendant was a cause in
   fact of the result. A mere possibility of such causation is
   not enough; and when the matter remains one of pure spec-
   ulation or conjecture, or the probabilities are at best evenly
   balanced, it becomes the duty of the court to direct a ver-
   dict for the defendant."

More recently, our Supreme Court stated that it is
insufficient to submit to the jury a causation theory
that, while factually supported, is, at best, just as pos-

sible as another theory. *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994). "Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* at 164-165. However, as the *Square D* Court stated: " '[I]f there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.' " *Id.* at 164, quoting *Kaminski v Grand Trunk W R Co*, 347 Mich 417, 422; 79 NW2d 899 (1956).

Here, the evidence was very weak that the eventual wrist fusion was the result of a logical sequence of events that began with the accident. Yet, when viewed in the light most favorable to the plaintiff the evidence concerning such causation was marginally sufficient to permit the question of causation to go to the jury. *Square D Co*, *supra* at 164, 174; *Schutte v Celotex Corp*, 196 Mich App 135, 138; 492 NW2d 773 (1992). Therefore, though a close question, the trial court did not err in permitting the case to go to a jury.

II

Defendants next argue that the trial court erred in denying their motion for a new trial, because the overwhelming weight of the evidence established that plaintiff's wrist could not have been injured in the manner in which he claimed. In reviewing a trial court's denial of a motion for a new trial, we must be mindful that the functions of the trial court and the

appellate court are not identical. The trial court's function with respect to a motion for a new trial is to determine whether the overwhelming weight of the evidence favors the losing party. *Arrington v Detroit Osteopathic Hosp Corp (On Remand)*, 196 Mich App 544, 564; 493 NW2d 492 (1992). As an appellate court, our function is to determine whether the trial court abused its discretion in making such a finding. *Id.* Here, there was no such abuse of discretion. While the two orthopedic surgeons (Dr. Noellert and Dr. Waldomar Roeser) agreed concerning the typical cause of a scaphoid fracture, they disagreed with respect to whether such a fracture could have been caused by the accident that plaintiff described. However, nothing in the record indicates that Dr. Noellert lacked credibility to the extent that the trial court should have granted a new trial. This issue is without merit.

III

At trial, defendants moved for a directed verdict on the ground that there was insufficient evidence of breach of an express warranty to permit submission of the claim to the jury. The motion was denied. Defendants raise the same issue on appeal. When reviewing a claim that there was insufficient evidence presented in a civil case, this Court must view the evidence in a light most favorable to the plaintiff and give the plaintiff the benefit of every reasonable inference. *Mull v Equitable Life Assurance Society of the United States*, 196 Mich App 411, 421; 493 NW2d 447 (1992). If, after viewing the evidence, reasonable people could differ, the question is properly left to the trier of fact. *Id.*

An express warranty is created by a seller by setting forth a promise or affirmation, description, or sample with the intent that the goods will conform. *Guaranteed Construction Co v Gold Bond Products*, 153 Mich App 385, 390; 395 NW2d 332 (1986). MCL 440.2313; MSA 19.2313 states in relevant part:

> (1) Express warranties by the seller are created as follows:
>
> (a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Plaintiff based his express warranty claim on a price quotation given by one of the defendants, that states in relevant part: "1822 TENAX Strapping (800# Break #380 Strength - 6,500' per coil)." The "#380" portion of the quote is handwritten; the remainder of the quote is typewritten. The "#380" refers to a specification that appears on a separate paper (created by plaintiff's employer, intervening plaintiff Motor Wheel Corp.) that stated that the "Tenax" polyester strapping is to have "AVE. BREAKING STRENGTH: 800 LBS." Neither the price quote nor the specification mention "splicing." It is undisputed that the particular piece of strapping that snapped in this case did so at a "spliced" joinder. According to plaintiff, defendants expressly warranted: (1) that the strapping had an eight hundred pound break strength, and (2) that there were no splices.

As a threshold matter, the only express warranty that this evidence supports is a warranty that the

strapping was to have an *average breaking strength* of eight hundred pounds. There was no express statement about splices, and therefore an express warranty that no splices exist cannot be inferred. See *Guaranteed Construction, supra* at 390. The critical issue therefore, is whether the evidence, viewed in the light most favorable to the plaintiff, was sufficient to permit a rational jury to find a breach of an express warranty that the strapping would have an *average breaking strength* of eight hundred pounds.

Plaintiff grounds his case on tests conducted by his expert engineer on other pieces of the Tenax strapping, which showed that it broke at less than eight hundred pounds of tension. The actual strap at issue in this case, although preserved, was never tested for its breaking strength. Plaintiff's expert testified that he tested seven other pieces of the polyester strapping:

> And this is the result that I got on those seven specimens. . . . you'll observe that it's 664, 797, 780 and so on. One got up to 800, but these are also less than these 800 pound break strength.

He also testified that he tested seven samples of spliced strapping, which revealed breaking strengths of 602, 595, 585, 588, 590, 580 and 604 pounds. Viewed in the light most favorable to plaintiff, this is sufficient for a reasonable jury to conclude that the average breaking strength of the Tenax strapping at issue was less than eight hundred pounds. Accordingly, this issue, although close, must be resolved in favor of plaintiff.

IV

Having affirmed the liability verdict, we turn to the question of damages. The jury's damage award compensated plaintiff for future lost wages for the years 1993 to 2021 inclusive; plaintiff will be seventy-three years old in 2021. Defendants assert that the trial court erred in denying that part of their motion for a JNOV, which asserted that there was insufficient evidence to show that plaintiff could have or would have worked until he reached age seventy-three. Defendants' allegation of error comes too late.

Although the trial court specifically instructed the jury that plaintiff's life expectancy was seventy-three years, neither plaintiff nor defendants tendered any evidence that plaintiff would have or would not have worked until the day he died. Curiously, there was no specific evidence at all concerning how long plaintiff would have, or could have, worked. As a general principle, a person's work life is not coterminous with that person's life expectancy. *Kirchgessner v United States*, 958 F2d 158, 163 (CA 6, 1992) (discussing calculation of future damages under MCL 600.6305[2]; MSA 27A.6305[2]). However, here defendants did not object to the trial court's life expectancy instruction, nor did they elicit any evidence that plaintiff would not have, or could not have, worked until he died. Therefore, while we have serious doubts about the propriety of permitting evidence of plaintiff's life expectancy to be used as the sole basis for calculation of future wage loss, this happened here because defendants failed to object to the court's instructions and failed to present their own evidence with respect to damages. *Goins v Ford Motor Co*, 131 Mich App

185, 199; 347 NW2d 184 (1983). We therefore affirm the award of future damages as rendered by the jury.


V


Defendants next allege that the lower court erred in failing to grant remittitur as follows: (1) by reducing the award of future damages by one-third, in light of plaintiff's poor work attendance record, and (2) by reducing the entire award of future damages for the years in which plaintiff will be sixty-six through seventy-three years old (2014 through 2021). The trial court's decision with respect to a request for remittitur is reviewed for an abuse of discretion. *Bordeaux v Celotex Corp*, 203 Mich App 158, 171; 511 NW2d 899 (1993).

Defendants' first basis for remittitur must be denied. Although the number of plaintiff's preaccident absences from work due to injury and illness is startling, the jury's award of damages for future lost wages was supported by plaintiff's testimony concerning his wages, the current union scale of wages for his old job, and the fact that his worker's compensation benefit was based on a thirty-nine-week average wage well in excess of his base wage, indicating substantial overtime. Therefore, the trial court properly exercised its discretion in denying defendants' motion for remittitur regarding the award for the years 1993 through 2013.

Defendants' second basis for remittitur (for years 2014 through 2021) must also be denied for the reasons stated in issue IV.

VI

Finally, plaintiff cross appeals the lower court's application of a five percent compound discount rate, rather than a simple rate of five percent per annum, in calculating the present value of plaintiff's future damages. MCL 600.6306; MSA 27A.6306, part of the tort reform act, 1986 PA 178, provides that future damages are to be reduced to "gross present cash value." Specifically, MCL 600.6306(2); MSA 27A.6306(2) provides:

> As used in this section, "gross present cash value" means the total amount of future damages reduced to present value at a rate of 5% per year for each year in which those damages accrue, as found by the trier of fact pursuant to section 6305(1)(b).

At the time the parties submitted their briefs on appeal, it was unclear whether present value was to be calculated with a simple interest rate, or with a compound rate. However, in *Nation v W D E Electric Co*, 213 Mich App 694, 700; 540 NW2d 788 (1995), this Court held that when a trial court reduces future economic and noneconomic damages to "gross present cash value" under MCL 600.6306; MSA 27A.6306, a compound reduction rate, rather than a simple reduction rate, must be used. The trial court thus did not err in using a compound discount rate in this case.

However, although the trial court correctly determined that the compound discount rate was to be used, it unfortunately incorporated the wrong set of calculations into its ultimate judgment. The correct calculations as presented by an expert witness are as follows:

| YEAR | VERDICT AMOUNT | PRESENT VALUE |
|------|---------------|---------------|
| 1993 | $ 26,000.00 | $ 24,761.90 |
| 1994 | 27,300.00 | 24,761.90 |
| 1995 | 28,700.00 | 24,792.14 |
| 1996 | 30,100.00 | 24,763.34 |
| 1997 | 31,600.00 | 24,759.43 |
| 1998 | 33,200.00 | 24,774.35 |
| 1999 | 34,800.00 | 24,731.71 |
| 2000 | 36,600.00 | 24,772.32 |
| 2001 | 38,400.00 | 24,752.98 |
| 2002 | 40,300.00 | 24,740.70 |
| 2003 | 42,400.00 | 24,790.40 |
| 2004 | 44,500.00 | 24,779.27 |
| 2005 | 46,700.00 | 24,766.01 |
| 2006 | 49,000.00 | 24,748.33 |
| 2007 | 51,500.00 | 24,772.38 |
| 2008 | 54,100.00 | 24,783.83 |
| 2009 | 56,800.00 | 24,781.65 |
| 2010 | 59,600.00 | 24,765.03 |
| 2011 | 62,600.00 | 24,772.95 |
| 2012 | 65,700.00 | 24,761.64 |
| 2013 | 69,000.00 | 24,767.02 |
| 2014 | 58,400.00 | 19,964.03 |
| 2015 | 62,100.00 | 20,217.98 |
| 2016 | 65,900.00 | 20,433.48 |
| 2017 | 69,900.00 | 20,641.66 |
| 2018 | 74,100.00 | 20,839.94 |
| 2019 | 78,500.00 | 21,026.09 |
| 2020 | 83,100.00 | 21,198.28 |
| 2021 | 88,000.00 | 21,379.28 |
| **TOTAL** | **$1,508,900.00** | **$685,800.04** |

The following is the "compound discount" formula for determining present value:

Present value = Future value x $1 / (1 + I)^n$
where $I$ is the interest rate and $n$ is the number of years. For example, using the above verdict amount for 1995 ($28,700), and calculating its present value at the start of 1993, (so that $n$ equals 3), and using a statutory interest rate of five percent, the following calculations would apply:

Present value = Future value x $1 / (1 + I)^n$

$$= \$28,700 \times 1 / (1 + .05)^3$$
$$= \$28,700 / (1.05 \times 1.05 \times 1.05)$$
$$= \$28,700 / 1.157625$$
$$= \$24,792.139.$$

The accuracy of this formula can be seen by working the calculations from 1993 forward to 1995. Taking $24,792.14 (the present value of plaintiff's verdict for 1995, as of 1993), times the statutory rate of five percent for three years (1993, 1994, 1995), will yield precisely the jury award of $28,700: $24,792.14 x 1.05 for 1993 will yield $26,031.747; multiplied by 1.05 for 1994 is $27,333.334; and this figure multiplied by 1.05 for 1995 yields exactly $28,700.

In light of the trial court's apparently inadvertent error, we remand for the limited purpose of changing the erroneous figure of $661,468.97 (the present value of the future damages award in the July 12, 1993, judgment) to $685,800.04, which represents the correct total present value of the future damages portion of the judgment. This amendment will increase the total judgment from $1,016,732.92 plus interest, to $1,041,064.48 plus interest; (i.e., $238,500 past damages, plus $111,623.78 prejudgment interest on past damages, plus *$685,800.04* present value of future damages, plus $5,140.66 costs, plus additional interest as set forth.)

CONCLUSION

Affirmed. The matter is remanded with directions consistent with this opinion. We do not retain jurisdiction.

O'CONNELL, P.J., concurred.

W. J. GIOVAN, J. (*concurring in part and dissenting in part*). I concur in the court's opinion, except that part which rejects the defendants' request for a judgment not withstanding the verdict regarding the award of lost earning capacity to the plaintiff for the entirety of his life expectancy.

The jury's verdict includes an award for future lost earning capacity, measured by lost wages,[1] from the date of trial to the year 2021, the last year of his life expectancy at age seventy-three.

The majority opinion concedes that a person's working life does not ordinarily extend until death and that there is no evidence in the record that supports an inference that the plaintiff would have worked beyond normal retirement age, but nevertheless declines, on two grounds, to give relief to the defendants: (1) the defendants did not object to the court's instruction concerning plaintiff's life expectancy and, (2) the defendants offered no evidence of their own that the plaintiff would not have worked beyond normal retirement age.

---

[1] That the award was based on projected lost wages is clear from the question on the verdict form which generated that part of the award that is in issue:

Question Number 3: If you find that the Plaintiff Dick Scott will sustain wage loss damages in the future, give the total amount for each year in which the Plaintiff will sustain damages.

The Court says that, for want of an objection, the plaintiff should receive, and the defendant should pay, damages that will never exist. But the rationale for precluding relief where there is no objection does not exist in this instance. The rationale, of course, is that a retrial should not be required when a timely objection would have provided the opportunity to correct the error. In this instance, however, damages were not rendered in a general verdict, and the offending part of the jury's award can be identified with one hundred percent accuracy from the special verdict form, thus making a retrial unnecessary in order to achieve a just result.

In the end, however, it is unnecessary to discuss whether an objection was required to preserve the issue because defendants could not have properly objected to the instruction on life expectancy in any event. The evidence clearly permitted a finding that some effects of plaintiff's injury were permanent, and the court was therefore obliged to instruct on plaintiff's life expectancy in order to allow for an appropriate award of future damages. The defendants waived nothing by failing to object to an instruction, the omission of which would have constituted error.

The Court's second justification for tolerating the windfall to the plaintiff and the penalty to the defendants is that the defendants did not prove that the plaintiff would not have worked beyond normal retirement age. That, of course, is a direct reversal of the allocation of the burden of proof, which is always assigned, by both law and logic, to the one who asserts the affirmative of a proposition. *McIntire v Carr*, 171 Mich 647, 651; 137 NW 811 (1912); *Dolph v Lake Shore & M S R Co*, 149 Mich 278, 281; 112 NW

981 (1907). The Court's ruling says, in effect, that a defendant who does not prove that a plaintiff would not have worked beyond normal retirement age, even in the absence of evidence to the contrary, stands liable to be assessed for lost wages until the day that the plaintiff is projected to draw his last breath.

I would remand for remittitur of the amount awarded to the plaintiff for future lost wages beyond the age of sixty-five years.