RODRIGUEZ v ASE INDUSTRIES, INC

Docket No. 263930. Submitted March 15, 2007, at Lansing. Decided March 22, 2007, at 9:05 a.m. Leave to appeal granted, 480 Mich ___.

Raquel Rodriguez brought an action in the Wayne Circuit Court against her employer, American Axle & Manufacturing Holdings, Inc., and ASE Industries, Inc., after she was injured on the job when her hair became entangled in a conveyor system manufactured by ASE. A jury ruled in the plaintiff's favor regarding her products-liability claim against ASE and determined that ASE, while not grossly negligent, was 30 percent at fault for the accident, and that American Axle was 70 percent at fault. The trial court, Daphne Means Curtis, J., found that ASE had actual knowledge that the product was defective and, therefore, declined to apply the damages limitations of MCL 600.2946a. ASE appealed and the plaintiff cross-appealed.

The Court of Appeals *held*:

1. The trial court did not err in ruling that the products-liability damages cap was inapplicable. The statute specifies that it is inapplicable if the defendant was grossly negligent or if the defendant had actual knowledge that its product was defective, and to give effect to both phrases, they must operate independently of each other. Accordingly, the trial court's determination that ASE had such actual knowledge was not inconsistent with the jury's verdict indicating that ASE was not grossly negligent, and to rule otherwise would render a portion of the statute meaningless.

2. The trial court did not err by allowing the jury to use a verdict form that permitted the plaintiff to be awarded wage-loss damages past the traditional retirement age of 65. There is no authority for the proposition that wage-loss damages are unavailable after this age, and ASE has not argued that the verdict was against the great weight of the evidence or that there was insufficient evidence to support the verdict.

3. The trial court did not err by failing to reduce the judgment by the amount of workers' compensation benefits paid to the plaintiff. Workers' compensation benefits are not a collateral source if they are subject to a valid lien, and even if, contrary to the trial court's conclusion, American Axle rather than defendant

Pacific Employers Insurance was the lienholder, the written agreement between American Axle and ASE would not have waived the lien because the agreement addressed only claims that American Axle might have against ASE, not claims that American Axle had against the plaintiff.

4. ASE is not entitled to a setoff of all future workers' compensation benefits as a collateral source because, by statute, any amount that the plaintiff recovers after reimbursing for workers' compensation benefits already paid is considered an advance payment on future benefits, and thus is not a collateral source.

5. Contrary to ASE's argument, American Axle may assert a lien for the entire amount of workers' compensation benefits despite the jury's finding that American Axle was 70 percent responsible for the accident because the Legislature has unambiguously provided that an employer is entitled to reimbursement without regard to the employer's own fault.

6. The plaintiff waived the issue she raised on cross-appeal regarding whether the trial court erred in granting summary disposition in favor of defendant Design Systems, Inc. (DSI), because the plaintiff successfully opposed the inclusion of DSI as a nonparty at fault, as indicated by the plaintiff's failure to object to the verdict form that did not require the jury to allocate fault to DSI.

Affirmed.

PRODUCTS LIABILITY — DAMAGES CAP — ACTUAL KNOWLEDGE.

A jury finding that a defendant in a products-liability action was not grossly negligent does not preclude the trial court from concluding that the defendant had actual knowledge that the product was defective and likely to cause injury, thereby rendering the damages cap inapplicable (MCL 600.2946a[3]; MCL 600.2949a).

*Fieger, Fieger, Kenney & Johnson, P.C.* (by *Ven R. Johnson, William J. McHenry,* and *Heather A. Jefferson*), for Raquel Rodriguez.

*Garan Lucow Miller, P.C.* (by *Rosalind Rochkind*), for ASE Industries, Inc.

*Burchfield, Park & Pollesch, P.C.* (by *Kenneth E. Burchfield*), for Design Systems, Inc.

*Conklin Benham, P.C.* (by *Martin L. Critchell*), for Pacific Employers Insurance.

Before: SAWYER, P.J., and FITZGERALD and DONOFRIO, JJ.

SAWYER, P.J. The primary issue presented for our consideration is whether a trial court is free to conclude that a defendant in a products-liability action had actual knowledge that the product was defective under MCL 600.2949a even if the jury has determined under MCL 600.2946a(3) that the defendant was not grossly negligent. We hold that the two determinations are independent and that a finding by the jury that there was no gross negligence does not preclude the trial court from concluding that the defendant had actual knowledge that the product was defective.

Plaintiff was seriously injured in the course of her employment with defendant American Axle & Manufacturing, Inc. Specifically, she was injured when her hair became entangled in the rollers of a conveyer system used at American Axle and manufactured by ASE Industries, Inc. The jury found in favor of plaintiff on her products-liability action against ASE. The jury further determined that ASE was 30 percent at fault for the accident and that American Axle was 70 percent at fault. Finally, while the jury found that ASE was not grossly negligent, the trial court found that ASE had actual knowledge that the product was defective and, therefore, declined to apply the damages limitations of MCL 600.2946a(1). Defendant ASE appeals, plaintiff cross-appeals, and we affirm.

ASE's first argument on appeal is that the trial court erred in ruling that the products-liability damages cap[1]

---

[1] MCL 600.2946a(1).

was inapplicable. We disagree. The limitations on damages in products-liability actions imposed under MCL 600.2946a(1) do not apply under certain conditions set forth in MCL 600.2946a(3):

> The limitation on damages under subsection (1) for death or permanent loss of a vital bodily function does not apply to a defendant if the trier of fact determines by a perponderance [sic] of the evidence that the death or loss was the result of the defendant's gross negligence, or if the court finds that the matters stated in section 2949a are true.

In this case, the jury found that ASE was not grossly negligent, but the trial court found that the matters stated in MCL 600.2949a were true, which required a finding that the defendant had actual knowledge that the product was defective and that there was a substantial likelihood that the defect would cause injury.

ASE argues that the trial court's determination that ASE had actual knowledge was inconsistent with the jury's determination that ASE was not grossly negligent. ASE further argues that the trial court cannot reach a determination that is inconsistent with the jury's verdict. Indeed, that is ASE's only argument on this point; it explicitly concedes in its reply brief that it is not arguing that the record does not support a finding of actual knowledge.

In interpreting an unambiguous statute, the statute must be applied as written.[2] Furthermore, we must assume that every word used by the Legislature has meaning, and effect should be given to every provision.[3] Applying these principles to the case at bar, MCL 600.2946a(3) provides that the damages limitation for

[2] *Danse Corp v Madison Hts*, 466 Mich 175, 182; 644 NW2d 721 (2002).
[3] *Id.*

death or permanent loss of a vital bodily function does not apply if the trier of fact determines that the "death or loss was the result of the defendant's gross negligence, or if the court finds that the matters stated in section 2949a are true." If ASE's argument is correct, then that final clause is meaningless. That is, if it is impossible for there to be actual knowledge without gross negligence and if the trial court's determination of actual knowledge must be consistent with the jury's determination of gross negligence, then the phrase "or if the court finds that the matters stated in section 2949a are true" serves no purpose. It would serve no purpose because if the trier of fact found gross negligence, then it would not matter if the trial court found actual knowledge. And, under defendant's reasoning, if the trier of fact found no gross negligence, then the trial court would not be permitted to find actual knowledge.

Accordingly, the only way to give meaning to the phrase "or if the court finds that the matters stated in section 2949a are true" is to conclude that the trial court's determination of actual knowledge does not have to be consistent with the jury's determination of gross negligence.[4] In other words, the statute clearly and unambiguously establishes two independent bases to avoid application of the damages limitation: if the trier of fact determines that the defendant was grossly negligent *or* if the trial court determines that the actual

---

[4] We specifically refer to the jury's determination here, while recognizing that the statute refers to the trier of fact rather than specifically a jury, because we acknowledge that the analysis may be different if the trial judge is sitting as the trier of fact without a jury. Because this case did involve a jury trial, we need not resolve the issue; we merely acknowledge that there may be a strong argument that a trial court that sits as the trier of fact must reach consistent determinations of gross negligence and actual knowledge.

knowledge provisions of § 2949a apply. The determination of one cannot control the determination of the other.

Furthermore, it is not our place to determine whether this statutory scheme is wise or even absurd.[5] But we can envision at least two legislative determinations that would provide a rationale for this scheme. First, the Legislature may have rejected the premise that a determination of actual knowledge compels a conclusion of gross negligence. It may have determined that there could be actual knowledge without gross negligence. If so, it is not our place to overrule that determination. Second, the Legislature may have established the second basis for avoiding the damages limitation to provide limited authority to the trial court to override the jury's determination of gross negligence. That is, it may have been a legislative choice to allow the trial court to waive the damages limitation, even where a jury concludes that there was no gross negligence. But in doing so, the Legislature set the standard higher, at the level of actual knowledge, so that it is not merely a matter of the trial court second-guessing the jury on the issue of gross negligence.

In any event, regardless of the reason for the statutory scheme, the Legislature created one that provides two independent bases to avoid application of the damages limitation. Further, as discussed earlier, that scheme is clear and unambiguous and, to give effect to both provisions, they must operate independently of each other, and the determination of the jury on the gross negligence issue cannot control the trial court's determination on the actual knowledge issue.

---

[5] See *United States Fidelity Ins & Guaranty Co v Michigan Catastrophic Claims Ass'n*, 274 Mich App 184, 203; 731 NW2d 481 (2007).

For the above reasons, we conclude that the trial court did not err in holding that the damages limitation provision does not apply to this case. Further, because of our determination of this issue, we need not address ASE's second issue regarding whether the damages limitation is to be applied before or after the reduction of the jury award for defendant's proportion of fault under MCL 600.2957 and MCL 600.6304.

ASE next argues that the damage award for wage loss must be reduced because the jury awarded wage-loss damages to age 83 when there was no evidence that plaintiff would have worked past a "normal retirement age" of 65. We disagree. ASE cites no authority, nor are we aware of any authority, for the proposition that damages for wage loss are only awardable to age 65, or any other specific age for that matter. We do find this Court's opinion in *Scott v Illinois Tool Works, Inc*,[6] instructive:

> Although the trial court specifically instructed the jury that plaintiff's life expectancy was seventy-three years, neither plaintiff nor defendants tendered any evidence that plaintiff would have or would not have worked until the day he died. Curiously, there was no specific evidence at all concerning how long plaintiff would have, or could have, worked. As a general principle, a person's work life is not coterminous with that person's life expectancy. *Kirchgessner v United States*, 958 F2d 158, 163 (CA 6, 1992) (discussing calculation of future damages under MCL 600.6305[2]; MSA 27A.6305[2]). However, here defendants did not object to the trial court's life expectancy instruction, nor did they elicit any evidence that plaintiff would not have, or could not have, worked until he died. Therefore, while we have serious doubts about the propriety of permitting evidence of plaintiff's life expectancy to be used as the sole basis for calculation of future wage loss, this

[6] 217 Mich App 35, 44; 550 NW2d 809 (1996).

happened here because defendants failed to object to the court's instructions and failed to present their own evidence with respect to damages.

In the case at bar, ASE points out that it did object. But it did not object to the jury instructions regarding calculation of wage-loss damages, but to the verdict form and the fact that the verdict form provided spaces to fill in for wage-loss damages to age 83. We see no inherent problem with a jury verdict form that asks the question whether the plaintiff will suffer a wage loss at age 83; the jury may always answer that the wage loss at age 83 is zero. The real questions, then, are (1) whether the jury was properly instructed so that it would be able to correctly determine when that answer should be zero and (2) whether the evidence supports the jury's conclusion. With respect to the first question, as in *Scott*, there was no objection in this case to the jury instructions with respect to the calculation of wage-loss damages. As for the second question, while ASE does discuss whether the evidence established that plaintiff would work past age 65, it does not actually argue that the verdict was against the great weight of the evidence or that there was not sufficient evidence to support the verdict. Indeed, again like *Scott*, there was no evidence presented that plaintiff could not or would not have worked past age 65. For these reasons, we are not persuaded that the trial court erred by allowing the jury to use a verdict form that permitted awarding damages past age 65.

ASE's final argument on appeal is that the trial court erred by failing to reduce the judgment by the amount of workers' compensation benefits paid to plaintiff. We disagree. Workers' compensation benefits are a collateral source unless they are subject to a valid lien. *Heinz*

*v Chicago Rd Investment Co*, 216 Mich App 289, 296-297; 549 NW2d 47 (1996). In the case at bar, the trial court ruled that defendant Pacific Employers Insurance, which provided the workers' compensation insurance, was the owner of the lien for the workers' compensation benefits paid and had not waived it.

ASE's argument is premised on establishing two facts: (1) that the lien belonged to American Axle as the employer rather than to Pacific Employers as the insurer and (2) that American Axle waived the lien as part of an agreement that it reached with ASE during this litigation. While the trial court's holding is focused on the first part, we believe that the second question presents a more straightforward analysis. ASE looks to an agreement it entered into with the employer before trial wherein both agreed to waive and release any and all claims of indemnification against the other with respect to the instant litigation. Specifically, ASE points to the following two provisions in that agreement:

> NOW COMES THE UNDERSIGNED, American Axle & Manufacturing, Inc. (hereinafter "AAM") and A.S.E. Industries, Inc. (hereinafter "ASE") and to avoid the on-going litigation in the case brought by and flowing from litigation instituted by Raquel Rodriguez referenced above and to buy their respective peace as between themselves, do hereby mutually agree to waive and release any and all claims of indemnification that each may now have or hereafter be entitled to as against each other, whether contractual in nature or arising under the common law, which claims arise out of or in any way flow from, the design, fabrication, assembly or production (as that term is defined in MCL 600.2945) of the A.S.E. oil fill equipment which is the subject of the above-captioned suit brought by Raquel Rodriguez. This agreement is limited to the specific

claim of Raquel Rodriguez and any and all claims that may or could flow from said claim is as referenced in the above-captioned suit.

By their signature affixed hereto, AAM and ASE warrant that they have not heretofore sold, assigned or transferred any rights they may have for indemnification or reimbursement, now or in the future, to any other party or entity. They further warrant that their respective insurance carriers have also agreed to be bound by this mutual waiver and release and themselves agree to waive and release any and all rights to indemnification and/or reimbursement of any kind they may have against the undersigned. AAM and ASE agree to indemnify and hold each other harmless from and against any and all claims that said insurance carriers may at any time bring forward in contravention of the terms and understandings contained in this agreement.

Unlike ASE, we see nothing in this agreement that would operate to waive the lien by American Axle even if the lien belongs to American Axle. This agreement only waives any claims that American Axle and ASE have against each other. It does not waive any claim that American Axle has against plaintiff. And while American Axle might have a lien against the judgment recovered by plaintiff against ASE, ultimately any right that American Axle has to recover workers' compensation benefits paid to plaintiff is a claim against plaintiff, not against ASE as the source of funds for plaintiff to repay those benefits to American Axle. Simply put, the agreement on which ASE relied waived any claim that American Axle had against ASE, not any claim that it had against plaintiff.

ASE further argues that all future workers' compensation benefits payable to plaintiff should have been treated as a collateral source because only those already paid are exempt from treatment as a collateral source.

We disagree. ASE bases its argument on MCL 600.6303(4), which provides as follows:

> As used in this section, "collateral source" means benefits received or receivable from an insurance policy; benefits payable pursuant to a contract with a health care corporation, dental care corporation, or health maintenance organization; employee benefits; social security benefits; worker's compensation benefits; or medicare benefits. Collateral source does not include life insurance benefits or benefits paid by a person, partnership, association, corporation, or other legal entity entitled by law to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages. Collateral source does not include benefits paid or payable by a person, partnership, association, corporation, or other legal entity entitled by contract to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages, if the contractual lien has been exercised pursuant to subsection (3).

ASE argues that, because future workers' compensation benefits are "receivable," they are a collateral source under the first sentence of subsection 4, but are not excluded from the definition of collateral source under the second sentence because that sentence only excludes benefits that have been "paid"; that is, that only benefits that have already been paid at the time of the judgment are excluded from the definition of "collateral source." Thus, ASE argues, it is entitled to a setoff of all future compensation benefits as a collateral source. We disagree.

ASE's argument overlooks the fact that plaintiff's workers' compensation benefits are not, in fact, receivable to the extent that plaintiff has obtained a judgment against ASE. ASE overlooks the effect of the second sentence of MCL 418.827(5), which states:

> Any recovery against the third party for damages resulting from personal injuries or death only, after deducting

expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance shall immediately be paid to the employee or his or her dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits.

This statutory provision clearly and unambiguously provides that the amount recovered by the plaintiff (after reimbursing for workers' compensation benefits already paid) shall be treated as an advance payment on future benefits. Thus, to the extent that the employee has recovered a judgment, future compensation benefits are not, in fact, "payable" because the employer has a credit for the amount recovered by the employee in the tort action. Because those future benefits are not "payable," they do not constitute a collateral source under MCL 600.6303(4).

Finally, ASE argues that American Axle should only be permitted to assert a lien for 30 percent of the workers' compensation benefits paid because the jury found it to be 70 percent responsible for the accident that gave rise to the payment of those benefits. We disagree. In its argument, ASE attempts to distinguish our holding in *Van Hook v Harris Corp*[7] on the basis that it was decided before the Legislature adopted the allocation of fault provisions. But the rationale in *Van Hook* was based on the provisions of MCL 418.827(5), which have not changed:

The Michigan statute, MCL 418.827(5); MSA 17.237(827)(5), provides that "[a]ny recovery * * * shall first reimburse the employer or carrier for any amounts paid or payable under this act". This subsection, on its face, applies regardless of the concurring negligence of the

---

[7] 136 Mich App 310; 356 NW2d 18 (1984).

employer. As the trial court concluded, "The Legislature no doubt knew that employers are sometimes concurrently negligent. The failure to provide a statutory reduction in such circumstances evinces an intent not to do so."[8]

The statutory language on which *Van Hook* relied remains unchanged and the rationale applies today as it did then: the Legislature clearly and unambiguously provided that an employer is entitled to reimbursement without regard to its own fault. Therefore, we reject ASE's argument that the statutory lien in this case should be reduced by 70 percent to reflect the allocation of negligence to the employer.

We now turn to the issue raised by plaintiff on cross-appeal. Plaintiff argues that the trial court erred in granting summary disposition to defendant Design Systems, Inc. (DSI). We need not determine, however, whether DSI was entitled to summary disposition because we agree with its argument that plaintiff has waived this issue by successfully opposing the inclusion of DSI as a nonparty at fault in the allocation of fault calculations by the jury in this case.

DSI is a consulting engineering firm that was hired by American Axle to determine the feasibility of the project that added the machinery on which plaintiff was injured, including developing a concept design and preparing the bid project. The detail design work, however, was the responsibility of the successor bidder; i.e., ASE. Plaintiff initially did not name DSI as a defendant, adding it only after American Axle and ASE filed their nonparty-at-fault disclosures.

In any event, we agree with DSI that plaintiff has waived any argument with respect to whether DSI should have been dismissed. In a tort action, fault must

---

[8] *Id.* at 312.

be allocated to each person who is at fault, regardless of whether that person is or could be a party to the action. MCL 600.2957; MCL 600.6304. Therefore, if DSI was at fault, its share of the fault had to have been allocated to it. DSI argues that plaintiff opposed ASE's request to include DSI as a nonparty at fault in the allocation of fault by the jury. While DSI fails to cite any part of the record to establish this fact and we were unable to find substantiation of this ourselves, we do note that, at a minimum, plaintiff did not object to the verdict form on the basis that it did not ask the jury to allocate fault to DSI. We believe that that is sufficient to deem plaintiff to have waived this issue.

A plaintiff certainly has strategic reasons not to afford the jury an opportunity to allocate fault to a particular nonparty. Any fault that the jury might allocate to a nonparty may be a portion of fault that the jury then does not allocate to an actual defendant, which then reduces the amount the plaintiff can recover from an actual defendant. For example, had DSI been included as a nonparty at fault in the jury's allocation of fault and the jury found DSI to be 10 percent at fault, then it may have reduced its allocation of fault to ASE from 30 percent to 20 percent. This would then reduce the amount that plaintiff could have collected from ASE from 30 percent of the damage determination to 20 percent. And ASE was the only party from whom plaintiff could collect at this point, with DSI having been dismissed and the claim against American Axle having been settled.

But we do not believe that plaintiff can create an appellate parachute for herself by omitting DSI from the allocation of fault because it had been dismissed, thus potentially increasing the amount of fault allocated to the remaining defendant, and thereafter argue

on appeal that summary disposition in favor of DSI was improper. In short, we hold that by failing to object to DSI's not being included in the allocation of fault in the jury verdict, plaintiff has abandoned her claim against DSI.

Affirmed. Plaintiff and defendant Pacific Employers may tax costs on appeal against defendant ASE. Defendant DSI may tax costs on cross-appeal against plaintiff.