BORDEAUX v THE CELOTEX CORPORATION
CONLEY v THE CELOTEX CORPORATION
ADAMS v THE CELOTEX CORPORATION

Docket Nos. 119332, 119333, 119334. Submitted October 20, 1993, at Detroit. Decided December 29, 1993, at 9:10 A.M.

Matthew J. Bordeaux, as personal representative of the estate of James L. Bordeaux, deceased; James J. Conley and Maxine D. Conley; and Margaret D. Adams, as personal representative of the estate of William J. Adams, deceased, brought separate negligence actions in the Wayne Circuit Court against The Celotex Corporation, alleging that the defendant and its predecessor, Philip Carey Manufacturing Company, failed to warn the plaintiffs' decedents and plaintiff James Conley of the health hazards of exposure to asbestos-containing products manufactured by the defendant or its predecessor. The plaintiffs alleged that the decedents and plaintiff James Conley had contracted laryngeal cancer from exposure to asbestos. The court, James E. Mies, J., on its own motion, consolidated the cases for jury trial. A jury returned verdicts for the plaintiffs and awarded them damages that were reduced for the decedents' and James Conley's comparative negligence in the form of tobacco or alcohol use. The court denied the defendant's motions for a new trial, judgment notwithstanding the verdict, and remittitur. The defendant appealed in each case, and the appeals were consolidated.

The Court of Appeals *held:*

1. The trial court did not err in consolidating the cases for trial. The defendant did not object to consolidation or move for severance. Moreover, pursuant to MCR 2.505(A), consolidation was proper in light of the substantial and controlling common

REFERENCES

Am Jur 2d, Actions §§ 156, 158; Appeal and Error §§ 123, 673, 810, 891, 892; Products Liability §§ 324, 327, 328, 331, 332, 354, 356, 357.

Appealability of state court order granting or denying consolidation, severance, or separate trials. 77 ALR3d 1082.

Manufacturer's or seller's duty to give warning regarding product as affecting his liability for product-caused injury. 76 ALR2d 9.

questions of law or fact, and consolidation presented no danger of adverse effects to the substantial rights of any of the parties or danger of confusion on the part of the jury.

2. The trial court did not err in denying the motion for judgment notwithstanding the verdicts in the Bordeaux and Adams cases. Contrary to the defendant's assertion, the plaintiffs in those cases were not under an obligation to establish that their decedents would have altered their behavior in response to warnings. Instead, those plaintiffs could and did expect the jury to infer that warnings would have been heeded and that the failure to warn was a proximate cause of the injuries, given that the consequences of exposure to the injury-producing products were severe, the lack of warning was undisputed, and the persons exposed to the products were dead.

3. The trial court did not abuse its discretion in denying the defendant's motion for judgment notwithstanding the verdict in the Bordeaux case. The defendant asserted in the motion that the plaintiff in that case failed to present sufficient evidence that the defendant's predecessor knew about the hazards of asbestos when the decedent in that case was exposed to asbestos. A product manufacturer is held to the knowledge of an expert with respect to the dangers associated with the intended use or foreseeable misuse of its product and is presumed to know of existing studies addressing the safety of its product. The plaintiff in the Bordeaux case presented expert testimony indicating that, before and during the exposure of the decedent in that case to asbestos, there were numerous studies in circulation warning of the dangers of prolonged exposure to asbestos.

4. The trial court did not abuse its discretion in refusing to read to the jury the special instructions requested by the defendant. The instructions given by the trial court properly instructed the jury with regard to the applicable law and facts and incorporated portions of the defendant's proposed instructions while avoiding repetition and juror confusion.

5. The trial court did not abuse its discretion in denying the defendant's motion for a new trial in which the defendant asserted that the verdicts were against the great weight of the evidence regarding comparative negligence. The Court of Appeals will not substitute its evaluation for that of the jury with respect to the competing experts' testimony regarding the significance of tobacco or alcohol use by the plaintiffs' decedents and by plaintiff James Conley.

6. Remand is required for reconsideration of the defendant's motion for remittitur in all three cases in light of the standard

adopted in *Palenkas v Beaumont Hosp*, 432 Mich 527 (1989), which is to be given retroactive effect.

Affirmed in part and remanded.

1. TRIAL — CONSOLIDATION OF ACTIONS.

A trial court, in its discretion, may order consolidation for trial of actions involving a substantial and controlling common question of law or fact; consolidation should not be ordered if the substantial rights of a party would be affected adversely or if juror confusion would result (MCR 2.505[A]).

2. NEGLIGENCE — FAILURE TO WARN — PROXIMATE CAUSE.

When proceeding under a theory of liability based on negligent failure to warn, proximate cause cannot be established unless it is shown that an adequate warning would have prevented the plaintiff's injury by altering the conduct involved; however, where the consequences of exposure to an injury-producing product are severe, the lack of warning is undisputed, and the worker who used the product is dead, the jury may be permitted to infer that a warning would have been heeded and that the failure to warn was a proximate cause of the injury.

3. PRODUCTS LIABILITY — DUTY TO WARN.

A product manufacturer is held to the knowledge of an expert with respect to the dangers associated with the intended use or foreseeable misuse of its product and is presumed to know of existing studies addressing the safety of its product.

4. TRIAL — JURY INSTRUCTIONS.

The determination whether a jury instruction is applicable and accurately states the law is within the discretion of the trial court.

5. MOTIONS AND ORDERS — NEW TRIAL — APPEAL.

A trial court's function regarding a motion for a new trial is to determine whether the overwhelming weight of the evidence favors the losing party; an appellate court's function is to determine whether the trial court abused its discretion in making that determination.

*Henderson & Goldberg, P.C.* (by *Joel Persky*), for the plaintiffs.

*Collins, Einhorn & Farrell, P.C.* (by *Clayton F. Farrell* and *Noreen L. Slank*), for the defendant.

Before: CORRIGAN, P.J., and NEFF and GRIBBS, JJ.

CORRIGAN, P.J. Defendant Celotex Corporation appeals as of right from three adverse judgments rendered after a consolidated jury trial.[1] The verdicts were rendered in connection with plaintiffs' claims for occupational exposure to asbestos-containing products for which defendant was at least partially responsible.[2] On appeal, defendant raises a number of issues, none of which warrant reversal. However, to permit defendant to challenge the awards under the remittitur standard of *Palenkas v Beaumont Hosp,* 432 Mich 527; 443 NW2d 354 (1989), we remand this matter.

The instant claims arise from James Bordeaux's, James Conley's, and William Adams' exposure to asbestos-containing materials during their employment in different trades. Matthew Bordeaux filed an action as personal representative of the estate of his father, James Bordeaux, who died at the age of sixty-three. James Bordeaux had been exposed to large amounts of asbestos dust during his employment as an insulator. Margaret Adams filed an action as personal representative of the estate of her husband, William Adams, who died of a heart attack at the age of seventy-two. William Adams had been exposed to asbestos products throughout his thirty-year career as a boilermaker. He contracted severe laryngeal cancer, ostensibly due, in part, to asbestos exposure. Fi-

[1] The Celotex Corporation is the successor of Philip Carey Manufacturing Company, which manufactured the asbestos-containing thermal insulation used at various industrial sites. Throughout this opinion, we will refer to Celotex as "defendant" and, where appropriate, to Philip Carey Manufacturing Company as "Carey."

[2] Throughout this opinion, we will use "plaintiffs" to refer to the personal representatives in the Bordeaux and Adams cases and to James and Maxine Conley in the Conley case. Where appropriate, the plaintiffs will be referred to by name in their individual capacity.

nally, James and Maxine Conley filed their action after James Conley developed malignant tumors in his neck. James Conley, a mechanical repairman, had also been exposed to large amounts of asbestos-containing materials manufactured by Philip Carey Manufacturing Company, defendant's predecessor.

Plaintiffs filed separate claims, naming various manufacturers as defendants and alleged liability based upon the manufacturers' failure to warn of the health risks associated with prolonged exposure to asbestos-containing insulation products. All the other defendants settled their cases before trial. Trial against defendant proceeded after the circuit court sua sponte ordered consolidation of the three cases.

Following a two-week trial, the jury returned verdicts of $600,000 to the estate of James Bordeaux, to be reduced for comparative negligence of sixty percent; $1 million to the estate of William Adams, to be reduced for comparative negligence of twenty percent; and $1.5 million to James J. Conley, and $10,000 to Maxine D. Conley, to be reduced for comparative negligence of forty percent. The judgment in each case was also reduced by the settlement amounts. Thereafter, defendant moved for a new trial, judgment notwithstanding the verdict, and remittitur. After the motions were denied, defendant claimed appeals. This Court ordered the appeals consolidated.

Defendant first argues that the trial court erred in consolidating these cases for trial. Specifically, defendant contends that its right to a fair trial was denied because the jury could not separate certain testimony and evidence regarding each plaintiff from that of the others. We disagree.

At no time before trial did defendant object to the court's consolidation of the claims, nor did

defendant file a motion for severance. Nothing in the court's standing pretrial order barred defendant from objecting to consolidation or from filing a motion for severance once consolidation had been ordered. Defendant's failure to raise the issue seasonably, before the motion for a new trial or the appeal, renders the issue waived. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents,* 444 Mich 211, 234; 507 NW2d 422 (1993).

Because of the unique nature of the consolidation order and the prospect that the issue will recur, we feel compelled to comment about the consolidation order.[3] As federal courts have noted, consolidation of asbestos-related litigation is both appropriate and commonplace. *Johnson v Celotex Corp,* 899 F2d 1281, 1284 (CA 2, 1990); *Hendrix v Raybestos-Manhattan, Inc,* 776 F2d 1492, 1497 (CA 11, 1985).

Consolidation in federal court is authorized under FR Civ P 42(a). Considerations of judicial economy often favor consolidation. *Johnson, supra* at 1285. Like the federal rule, MCR 2.505(A) permits consolidation of actions when "substantial and controlling common questions of law or fact are pending" before the court. See *Cohen v Cohen,* 125 Mich App 206, 212; 335 NW2d 661 (1983); *Papcum v L R Jacobs Construction Co,* 95 Mich App 746, 748-749; 291 NW2d 191 (1980). Decisions regarding consolidation rest in the sound discretion of the trial court. *Blumenthal v Berkley Homes, Inc,* 342 Mich 36, 40; 69 NW2d 183 (1955); *Papcum, supra* at 749 (quoting 2 Honigman & Hawkins, Michigan Court Rules Annotated [2d ed], p 365); 3 Martin, Dean & Webster, Michigan Court Rules Practice (3d ed), MCR 2.505, p 80. Consolida-

---

[3] According to representations made by the trial court at the hearing on the motion for a new trial, there are over nine hundred asbestos-related claims pending in the Wayne Circuit Court.

tion should not be ordered if the substantial rights of a party would be adversely affected or if juror confusion would result. *Papcum, supra* at 749.

Defendant points to various claimed adverse effects of consolidation. However, the record indisputably reveals the existence of substantial and controlling common issues of law and fact, justifying the consolidation of the cases. All three injured workers suffered from some form of laryngeal cancer, allegedly incited by prolonged exposure to asbestos-containing materials. All three plaintiffs premised liability upon defendant's failure to warn the injured parties of the dangers of such exposure. Each of the injured parties also had a history of smoking and alcohol use. Many of the witnesses presented testimony that was relevant to each case. Indeed, consolidation worked to some degree to the defendant's advantage because the expert testimony offered by the defendant was relevant to all three cases.

Scrutiny of the record reflects that the jury was not confused or tainted by the various instructions, the commingling of the death cases with the live plaintiff in the Conley case, and the diverse facts of the cases at hand. The trial court conscientiously insured that the jury appropriately discharged its function. As stated in the context of criminal proceedings, in order for the jury system to function, jurors are and must be presumed to understand and follow the court's instructions. *Richardson v Marsh,* 481 US 200, 211; 107 S Ct 1702; 95 L Ed 2d 176 (1987).[4] That principle applies equally to this case. The jury was instructed according to the law. By all appearances, it ap-

___

[4] Of course, we recognize the exception in the criminal context established by *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968). However, inasmuch as that exception is premised upon Confrontation Clause concerns, the exception has no application in this case.

plied the law appropriately in each case. The jury was not unduly confused by the disparity in the instructions or the application of those instructions to the testimony in each case.

Defendant's claim that the court consolidated these cases to penalize it for changing its settlement posture is similarly unpersuasive. Rather, in responding to defendant's postjudgment claim that the court erred in consolidating the cases, the court explained that defendant's posture had resulted in fewer cases being settled, thereby requiring consolidation as a practical matter. Nothing in this record suggests that the court acted in a vindictive manner to punish defendant for refusing to settle the cases.

In short, defendant has not established prejudice by virtue of the consolidation order. This trial held no surprises. Nothing brought out during the trial was unknown to defendant when the cases were consolidated. Defendant cannot be excused for its failure to object or move for severance before trial. Although the circuit court acted on its own motion, a party must preserve claims of improper consolidation by moving for severance before trial.

Defendant next argues that the court erred in denying its motion for judgment notwithstanding the verdict in the Bordeaux and Adams cases because plaintiffs did not establish that the decedents would have altered their behavior in response to warnings. We disagree. In reviewing a motion for judgment notwithstanding the verdict, the trial court must review the evidence in a light most favorable to the nonmoving party. *Clemens v Lesnek,* 200 Mich App 456, 461; 505 NW2d 283 (1993) (quoting *Wilson v General Motors Corp,* 183 Mich App 21, 36; 454 NW2d 405 [1990]). A court should grant judgment notwithstanding the verdict where the evidence is insufficient to create a

jury question; it should not do so where the evidence would permit reasonable minds to differ about issues of fact. *Id.* A trial court's decision on a motion for judgment notwithstanding the verdict must be affirmed absent a clear abuse of discretion. *Id.*

In most failure-to-warn cases, proximate cause is not established absent a showing that the plaintiff would alter his or her behavior in response to a warning. *Nichols v Clare Community Hosp,* 190 Mich App 679, 684; 476 NW2d 493 (1991). However, in certain circumstances, the jury may infer this fact from the evidence presented. *Schutte v Celotex Corp,* 196 Mich App 135, 140; 492 NW2d 773 (1992). In *Schutte,* a panel of this Court stated that

> where the consequences of the exposure are severe, the lack of warning is undisputed, and the person exposed is dead, the jury may be permitted to infer that a warning would have been heeded and that the failure to warn was a proximate cause of the injury. [*Id.* at 141.]

In so holding, the panel relied upon *Raney v Owens-Illinois, Inc,* 897 F2d 94 (CA 2, 1990). Inasmuch as there are no significant characteristics distinguishing this case from *Schutte,* defendant's claim that the court abused its discretion in denying judgment notwithstanding the verdict in the Bordeaux and Adams cases must fail.

Defendant's next challenge relates only to the Bordeaux case. In 1962, an actuary employed by Carey retained Dr. Thomas Mancuso as a consultant to give advice about potential costs associated with potential problems for Carey employees who had prolonged exposure to asbestos-containing products. Bordeaux's exposure to the asbestos products predated Carey's retention of Dr. Man-

cuso.[5] Dr. Mancuso's testimony was determined to be irrelevant to the question of Carey's knowledge of the dangers attendant to Bordeaux's exposure to asbestos before 1962. Thus, argues defendant, Bordeaux failed to present sufficient evidence that Carey knew about the dangerous characteristics of asbestos at the time that Bordeaux was exposed.

Defendant also presents this argument in the context of the trial court's failure to grant judgment notwithstanding the verdict. Accordingly, we consider the evidence presented in a light most favorable to Bordeaux. We will not reverse absent a clear abuse of the trial court's discretion. *Clemens, supra* at 461. We see no clear abuse of discretion. In Michigan, the manufacturer of a product is held liable for failure to warn of dangers associated with the intended use or foreseeable misuse of its products, limited by certain policy-related concepts. *Glittenberg v Doughboy Recreational Industries (On Rehearing)*, 441 Mich 379, 387-389; 491 NW2d 208 (1992). The manufacturer is held to the knowledge of an expert and is presumed to know of existing studies addressing the safety of a product. *Bradbury v Ford Motor Co*, 123 Mich App 179, 186; 333 NW2d 214 (1983), modified on other grounds 419 Mich 550; 358 NW2d 550 (1984).

Plaintiff's expert, Dr. Barry Castleman, established that studies conducted as early as 1898 suggested that prolonged exposure to asbestos could result in injury. Moreover, Dr. Castleman pointed to numerous American industrial-hygiene studies done that also recognized the dangers attendant to prolonged exposure to asbestos-containing materials. According to Dr. Castleman, most of those articles enjoyed industry-wide circulation. In

---

[5] In fact, counsel for Bordeaux admitted that the latest exposure likely occurred in the 1950s.

some instances, the studies were conducted on behalf of the asbestos-manufacturing industry. Dr. Castleman also identified articles published in the United States in the late 1930s that established a link between exposure to asbestos and lung cancer. Many articles also suggested means of protecting workers from exposure, such as providing masks and ventilation in the work areas.[6]

Viewing this evidence of industry-wide knowledge in a light most favorable to Bordeaux, we readily conclude that the circuit court did not abuse its discretion. Defendant knew or should have known of the dangers of prolonged exposure to asbestos-containing products at the time that Bordeaux was exposed to the asbestos. Insofar as defendant presents this issue as one of the trial court's failure to grant a directed verdict, both the standard of review and the result reached above remain the same. See *Clemens, supra* at 461. The court did not abuse its discretion in denying defendant's motion for a directed verdict or for judgment notwithstanding the verdict on this ground.

Defendant next complains that the trial court erred in instructing the jury about the elements necessary to sustain the cause of action and the manner in which those elements could be shown. Specifically, defendant claims that the court erred in giving the standard jury instructions applicable to negligence and products liability cases in lieu of its proposed special instruction. We disagree.

The appellate standard of review of issues of this nature is succinctly stated as follows:

The determination whether a jury instruction is applicable and accurately states the law is within

---

[6] For a more comprehensive discussion of the knowledge and material available on the subject of asbestosis and dangers attendant to prolonged exposure to asbestos dust, see *Hendrix, supra* at 1498-1500.

the discretion of the trial court. *Petrove v Grand Trunk W R Co,* 174 Mich App 705, 712; 436 NW2d 733 (1989). In order for a court to give a requested jury instruction, sufficient evidence must be presented by the party to warrant the instruction. *Wincher v Detroit,* 144 Mich App 448, 456; 376 NW2d 125 (1985), lv den 424 Mich 872 (1986). Jury instructions are reviewed by this Court in their entirety and should not be extracted piecemeal. *Niemi v Upper Peninsula Orthopedic Ass'n,* 173 Mich App 326, 328; 433 NW2d 363 (1988). Reversal is not required if, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury. *Scalabrino v Grand Trunk W R Co,* 135 Mich App 758, 766; 356 NW2d 258 (1984), lv den 422 Mich 877 (1985). [*Wiegerink v Mitts & Merrill,* 182 Mich App 546, 548; 452 NW2d 872 (1990).]

A trial court may give an instruction not covered by the standard instructions as long as the instruction accurately states the law and is understandable, concise, conversational, and nonargumentative. *Knight v Gulf & Western Properties, Inc,* 196 Mich App 119, 123; 492 NW2d 761 (1992).

The circuit court incorporated helpful portions of defendant's instructions into the general charge without elevating the danger of repetition and confusion. Having compared defendant's proposed special instruction with the court's actual instruction, we conclude that the majority of defendant's requested instruction was given. The instructions, when read as a whole, reveal that the jury was properly instructed on the applicable law and facts. Accordingly, the court did not abuse its discretion when it declined to read defendant's specially requested instruction.

Defendant next contends that the jury verdicts were against the great weight of the evidence. Defendant observes that each of the injured work-

ers had long histories of tobacco and, in varying degrees, alcohol use and argues that the slight comparative negligence reductions in each case was contrary to the great weight of the evidence. Having reviewed the record in detail, we disagree.

In *Arrington v Detroit Osteopathic Hosp Corp (On Remand),* 196 Mich App 544; 493 NW2d 492 (1992), our Court reiterated the fundamental proposition that this Court applies an abuse of discretion standard to a lower court's ruling on a motion for a new trial on the ground that the verdict was against the great weight of the evidence. *Id.* at 551 (quoting *Bosak v Hutchinson,* 422 Mich 712, 737; 375 NW2d 333 [1985]). The trial court must determine whether the overwhelming weight of the evidence favors the losing party, while this Court determines whether the trial court abused its discretion in making that determination. *Arrington, supra* at 564.

The circuit court did not abuse its discretion in denying defendant's motion for a new trial based upon the claim that the verdicts were against the great weight of the evidence. Defendant presented expert testimony to suggest that smoking tobacco and using alcohol were recognized as potential causes of laryngeal cancer. Each plaintiff presented countervailing expert testimony to suggest that exposure to asbestos fibers also contributed to development of the cancer. The jury reduced the verdicts by the amount of comparative negligence it deemed appropriate in light of the history of tobacco or alcohol use in each case. None of the reductions are so drastic (or so slight) as to suggest that the jury completely misgauged the testimony. Defendant essentially invites us to substitute our evaluation of the experts' credibility for the jury's judgment. In light of the governing standard of review, we decline this invitation. *Kalamazoo Co*

*Road Comm'rs v Bera,* 373 Mich 310, 314; 129 NW2d 427 (1964); *Arrington, supra* at 553.

Defendant finally claims that the trial court erred in denying its motion for a remittitur in each case. In support of its argument, defendant suggests that our Supreme Court's decision in *Palenkas, supra,* is to be given retroactive application and that a remand to the trial court is required. While we express no opinion on the merits of the remittitur argument, we remand to the trial court, which shall reconsider the remittitur issue in light of the standard announced in *Palenkas.*

A trial court's decision with respect to remittitur is reviewed for an abuse of discretion. *Palenkas, supra* at 533; *Knight, supra* at 130. Appellate courts must defer to a trial court's decision because of the trial court's superior ability to view the evidence and evaluate the credibility of the witnesses. *Id.* Although it is true that certain cases have raised the *Palenkas* issue, and been finally resolved in this Court, see *id.* at 130-132; *McMillan v Auto Club Ins Ass'n,* 195 Mich App 463, 467; 491 NW2d 593 (1992); *Jenkins v Raleigh Trucking Services, Inc,* 187 Mich App 424, 430; 468 NW2d 64 (1991), we do not feel it is appropriate to do so in this case.

The motion for remittitur in this case was argued with the motion for a new trial on June 5, 1989. The trial court denied the motion from the bench at the conclusion of the hearing. In addressing the remittitur issue, the trial court relied almost exclusively on the subjective considerations attendant to the "shock the conscience" standard then prevailing. Our Supreme Court decided *Palenkas* on June 7, 1989, and fully abandoned that standard. However, it was not until July 5, 1989, that the motion for remittitur in the case was formally denied by entry of an order and without

formal consideration of the objective factors recently articulated in *Palenkas.*

Plaintiffs concede that the trial court clearly applied the shock the conscience standard rather than the newly announced objective standard of *Palenkas.* However, plaintiffs argue that defendant had ample opportunity to brief the trial court on the existence of *Palenkas* before release of the order denying the motion and that its failure to do so renders the issue waived. While we agree that defendant should have apprised the trial court of the change in law before issuance of the order, we cannot agree that defendant's failure to do so rendered the issue waived.

A large part of the reasoning behind the Court's decision in *Palenkas* was that the trial court is in the best position to determine whether the jury's verdict was motivated by impermissible considerations. *Palenkas, supra* at 534. On the basis of this assumption, we think it is appropriate to return this matter to the trial court, which shall have an opportunity to consider the verdicts in each of the cases in light of the objective factors articulated in *Palenkas.* A remand is particularly appropriate where the court relied so heavily on the shock the conscience standard, had an opportunity to account for the change in law before formal disposition of the motion, and failed to consider any of the objective factors (including consideration of comparable cases and their verdicts) established by *Palenkas.*

Affirmed in part and remanded for further proceedings consistent with this opinion. The hearing on remand shall be held within ninety days of the release of this opinion. The transcript must be filed within thirty days thereafter. We retain jurisdiction.