SWANSON v PORT HURON HOSPITAL (ON REMAND)

Docket Nos. 275404 and 278491. Submitted January 25, 2010, at Lansing. Decided June 24, 2010. Approved for publication September 28, 2010, at 9:05 a.m.

Heather Swanson brought a medical malpractice action in the St. Clair Circuit Court against Port Huron Hospital (also known as Port Huron Hospital Medical Group), Jeannie L. Rowe, D.O., and Bluewater Obstetrics and Gynecology, P.C. Plaintiff alleged, in part, that Dr. Rowe's negligence during a laparoscopic procedure to remove an ovarian cyst resulted in a puncture wound to her aorta and a scar around her navel as a result of a laparotomy performed to repair the aorta. Port Huron was dismissed from the proceedings. After the close of plaintiff's proofs, the remaining two defendants moved for a directed verdict, arguing that plaintiff's affidavit of merit had not sufficiently specified the element of proximate cause, as MCL 600.2912d(1)(d) required, because it did not properly describe the manner in which defendants' breach caused plaintiff's injury. The court, Daniel J. Kelly, J., denied the motion, concluding that the affidavit was sufficient. After the jury returned a verdict in plaintiff's favor, defendants moved for judgment notwithstanding the verdict or a new trial, arguing again that the affidavit of merit was deficient and also that plaintiff's notice of intent had failed to comply with MCL 600.2912b. The court denied the motion. Defendants appealed, and plaintiff appealed the court's award of attorney fees and costs. After consolidating the appeals, the Court of Appeals, WHITBECK, P.J., and OWENS, J., (O'CONNELL, J., dissenting), reversed in an unpublished opinion per curiam, issued June 2, 2009 (Docket Nos. 275404 and 278491), concluding that the notice of intent was defective, and remanded the case for entry of an order vacating the verdict and judgment against defendants. In lieu of granting plaintiff's application for leave to appeal, the Supreme Court vacated the judgment of the Court of Appeals and remanded for that court to reconsider the parties' appeals in light of *Bush v Shabahang*, 484 Mich 156 (2009), and MCL 600.2301. 485 Mich 1008 (2009).

On remand, the Court of Appeals *held*:

1. MCL 600.2301 allows a court to amend any process, pleading, or proceeding in an action for the furtherance of justice on terms that are just. *Bush* held that MCL 600.2301 may be used to cure defects in a notice of intent. Under *Bush*, the applicability of MCL 600.2301 rests on a two-pronged test: first, whether a substantial right of a party is implicated and, second, whether a cure is in the furtherance of justice. In medical malpractice cases, in which the defendants are health professionals with enough medical expertise to understand the nature of the claims against them, defects present in a notice of intent do not implicate substantial rights. When a plaintiff makes a good-faith attempt to comply with the requirements for the notice of intent set forth in MCL 600.2912b, allowing an amendment to cure any defects in the notice, rather than dismissing the action without prejudice, is in the furtherance of justice.

2. Plaintiff's notice of intent was defective because it failed to provide sufficient statements regarding the breach of the standard of care, the actions that defendants should have taken to comply with that standard, and proximate cause. However, plaintiff provided an explanation of the factual basis of her claim and made a good-faith effort to comply with the statutory content requirements by alleging numerous standards of practice or care she considered applicable. The defects in her notice did not warrant dismissal and should be disregarded.

3. The trial court erred by instructing the jury on the doctrine of res ipsa loquitur. That instruction is appropriate when the requesting party presents sufficient evidence (1) that the event was of a kind that ordinarily does not occur in the absence of someone's negligence, (2) that it was caused by an agency or instrumentality within the exclusive control of the defendant, (3) that it was not due to any voluntary action or contribution on the part of the plaintiff, and (4) that evidence of the true explanation of the event is more readily accessible to the defendant than the plaintiff. At trial, both plaintiff and defendants presented evidence that plaintiff's injury was a known complication of laparoscopic surgery and could occur in the absence of any negligence on the part of the treating physician. Accordingly, the jury was incorrectly instructed, and reversal was required.

Reversed and remanded.

1. NEGLIGENCE — MEDICAL MALPRACTICE — NOTICE OF INTENT TO FILE SUIT — DEFECTS IN NOTICE — AMENDMENT OF NOTICE.

MCL 600.2301 allows for the amendment of processes, pleadings, or proceedings and may be used to cure defects in a notice of intent

under MCL 600.2912b; determining whether MCL 600.2301 applies involves a two-pronged test: first, whether a substantial right of a party is implicated and, second, whether a cure is in the furtherance of justice; in medical malpractice cases, in which the defendants are health professionals with enough medical expertise to understand the nature of the claims against them, defects present in a notice of intent do not implicate substantial rights; when a plaintiff makes a good-faith attempt to comply with the requirements for the notice of intent set forth in MCL 600.2912b, allowing an amendment to cure any defects in the notice is in the furtherance of justice.

2. NEGLIGENCE — RES IPSA LOQUITUR — ELEMENTS.

Instructing a jury on the doctrine of res ipsa loquitur is appropriate when the requesting party presents sufficient evidence (1) that the event was of a kind that ordinarily does not occur in the absence of someone's negligence, (2) that it was caused by an agency or instrumentality within the exclusive control of the defendant, (3) that it was not due to any voluntary action or contribution on the part of the plaintiff, and (4) that evidence of the true explanation of the event is more readily accessible to the defendant than the plaintiff.

*Sachs Waldman, Professional Corporation* (by *Linda Turek*), for Heather Swanson.

*Chapman and Associates, P.C.* (by *Ronald W. Chapman* and *Brian J. Richtarcik*), for Jeannie L. Rowe, D.O., and Bluewater Obstetrics and Gynecology, P.C.

ON REMAND

Before: WHITBECK, P.J., and O'CONNELL and OWENS, JJ.

PER CURIAM. This matter returns to this Court on remand from the Michigan Supreme Court[1] with the direction that we evaluate the merits of these appeals in light of *Bush v Shabahang*[2] and MCL 600.2301. We reverse.

---

[1] *Swanson v Port Huron Hosp*, 485 Mich 1008 (2009).

[2] *Bush v Shabahang*, 484 Mich 156; 772 NW2d 272 (2009).

I. OVERVIEW

This is a consolidated appeal arising out of a medical malpractice action filed by plaintiff, Heather Swanson, against defendants, Port Huron Hospital (also known as Port Huron Hospital Medical Group), Jeannie L. Rowe, D.O., and Bluewater Obstetrics and Gynecology, P.C. Swanson alleged, in part, that Dr. Rowe's negligence during a laparoscopic procedure to remove an ovarian cyst resulted in a puncture wound to Swanson's aorta and then a scar around her navel as a result of a laparotomy performed to repair the aorta. In Docket No. 275404, Dr. Rowe and Bluewater appeal as of right the jury trial judgment in Swanson's favor. In Docket No. 278491, Swanson appeals as of right the trial court's award of attorney fees and costs. The trial court dismissed Port Huron Hospital from the proceedings below, and thus it is not a party to either appeal.

II. UNDERLYING FACTS AND PROCEDURAL HISTORY

On April 9, 2002, 16-year-old Swanson went to the Port Huron Hospital emergency room, complaining of severe pain in the lower right quadrant. An ultrasound showed a 4-centimeter ovarian cyst, and the hospital admitted her. The attending physician requested an obstetrics/gynecology consultation with Dr. Rowe. Dr. Rowe then diagnosed Swanson as having a right ovarian cyst. Swanson was discharged from the hospital on April 11, 2002, even though her pain was allegedly continuous and she was experiencing nausea and vomiting.

On April 12, 2002, Swanson returned to see Dr. Rowe, still complaining of severe pain in the lower right quadrant, nausea, and vomiting. A pelvic ultrasound showed that the cyst had grown to 5.6 centimeters. Dr.

Rowe recommended a laparoscopy and drainage of the cyst. According to Dr. Rowe, in discussing the procedure with Swanson and her mother, Dr. Rowe informed them that the risks involved in such treatment included "the risk of possible injury to bowel, blood vessels or other pelvic organs . . . ." Swanson's mother admitted that Dr. Rowe told her that damage to blood vessels could occur, but she claimed that she thought that meant "little vessels," not the "main aorta." Later that same day, the hospital readmitted Swanson and scheduled her for a laparoscopy with a possible right ovarian cystectomy and a possible appendectomy later that same evening. Before the procedure, Swanson's mother signed an "Authorization, Release and Waiver" form and an informed consent form.

At 6:30 p.m. on April 12, 2002, Dr. Rowe performed the laparoscopy. The laparoscopy was initiated by inserting a Veress needle through the umbilical fold into the abdomen. More specifically, the Veress needle was inserted caudally, at an angle toward the feet, while Dr. Rowe lifted up on the abdomen with a towel clip. Once the Veress needle was inserted into the abdomen, carbon dioxide gas was passed through the needle into the abdomen to insufflate the abdomen. According to Dr. Rowe, the Veress needle was then withdrawn from the abdomen and a trocar inserted at an angle towards the feet, through which a camera was used to observe the ovarian cyst. At that time, Dr. Rowe observed some bright red blood in the peritoneal cavity. Dr. Rowe was not immediately able to locate the exact source of the bleeding, but it appeared to stop, so she proceeded to drain the cyst.

While Dr. Rowe was withdrawing the instruments from the surgical site, she observed a large "pulsating" mass (i.e., a retroperitoneal hematoma). Dr. Rowe con-

sulted a general surgeon, who immediately recommended a vascular consultation with Dr. Khattab Joseph. With Dr. Rowe's assistance, Dr. Joseph then performed an exploratory laparotomy. According to Dr. Rowe, during this second procedure, an incision was made approximately 2 inches above the umbilicus, extending to about 3 inches below the umbilicus. Dr. Joseph and Dr. Rowe identified a "very small" puncture, "like a needle puncture," at the distal portion of the aorta at its bifurcation. Dr. Joseph repaired the puncture with two "very fine sutures." Dr. Joseph opined that, given the puncture's small size, the Veress needle had caused it. Dr. Rowe also opined that the puncture was caused when she inserted the Veress needle. Dr. Rowe then closed the incision without further complications.

On April 18, 2002, the hospital discharged Swanson. Swanson alleged that at the time of her discharge, she had continued pain in the lower right quadrant, a significant amount of pain from gas, and straining with bowel movements. Dr. Rowe testified that Swanson was discharged with medication to treat nausea and pain, but she was in stable condition.

In April 2004, Swanson initiated this lawsuit by mailing a notice of intent[3] to defendants. The notice of intent alleged that the applicable standard of care required defendants, *inter alia,* to "appropriately evaluate the aforementioned patient, including but not limited to, assessing the abdomen and abdominal structures in order to determine the appropriate amount of force needed to perform a laparoscopy"; "appropriately identify the location of the aorta and other anatomical structures prior to placing the veress needle . . . [and] the trocar"; and "protect vital structures, such as the

---

[3] MCL 600.2912b.

aorta from surgical injury." With respect to breach of the standard of care, the notice of intent stated, "The applicable Standard of Practice and Care was breached as evidenced by the failure to do those things set forth in Section II above." Regarding what actions should have been taken to comply with the standard of care, the notice of intent stated, "The action that should have been taken to achieve compliance with the Standard of Care should have been those things set forth in Section II above." And with respect to proximate cause, the notice of intent stated, "As a result of the defendants' gross and blatant negligence, Heather Swanson sustained injury to the main artery in her body, necessitating a surgical repair that rendered this teenager permanently scarred and disfigured, along with intermittent diarrhea and abdominal pain."

In October 2004, Swanson filed her complaint and affidavit of merit.[4] Swanson's affidavit of merit, signed by Dr. Jon Hazen, explained the proximate cause element as follows: "As a direct result of Defendants' gross and blatant negligence, Heather Swanson sustained injury to the main artery in her body, necessitating a surgical repair that rendered this teenager permanently scarred and disfigured, along with intermittent diarrhea and abdominal pain."

During the September 2006 jury trial, Swanson's primary theory of liability was premised on allegations that Dr. Rowe inserted the Veress needle or trocar at the wrong angle into the abdomen and used too much force during the insertion. At the close of Swanson's proofs, defendants moved for a directed verdict, arguing that Swanson's affidavit of merit did not sufficiently specify the element of proximate cause, as MCL 600.2912d(1)(d) required, because it did not describe the manner in which defendants'

---

[4] MCL 600.2912d.

breach "factually and foreseeably" caused Swanson's injury. The trial court denied the motion, concluding that the affidavit was sufficient.

Following deliberations, the jury returned a verdict in Swanson's favor, finding that Swanson had sustained an injury, that defendants were negligent, and that defendants' negligence was the proximate cause of Swanson's injury. Defendants then moved for a judgment notwithstanding the verdict (JNOV) or a new trial, arguing again that Swanson's affidavit of merit was deficient and also arguing that Swanson's notice of intent failed to comply with MCL 600.2912b. The trial court denied defendants' motion.

### III. PRIOR APPELLATE PROCEEDING

Defendants appealed in this Court (Docket No. 275404), arguing, in pertinent part, that the trial court clearly erred by denying their motion for JNOV or a new trial. Defendants argued they were entitled to a JNOV because Swanson's notice of intent "failed to sufficiently specify proximate cause by failing to detail the manner in which defendants' alleged breach of the standard of care factually and foreseeably caused injury to Swanson's aorta."[5]

A majority of this Court (WHITBECK, P.J., and OWENS, J.) reversed the judgment against defendants on the ground that the notice of intent was defective and remanded the case for entry of an order vacating the verdict and judgment against defendants.[6] The *Swanson* majority reasoned:

---

[5] *Swanson v Port Huron Hosp*, unpublished opinion per curiam of the Court of Appeals, issued June 2, 2009 (Docket Nos. 275404 and 278491), p 3.

[6] *Id.* at 6.

Here, the notice of intent alleged that the applicable standard of care required defendants to, *inter alia*, "appropriately evaluate [Swanson], including but not limited to, assessing the abdomen and abdominal structures in order to determine the appropriate amount of force needed to perform a laparoscopy;" "appropriately identify the location of the aorta and other anatomical structures prior to placing the veress needle . . . [and/or] the trocar . . .;" and "protect vital structures, such as the aorta from surgical injury." With respect to breach, Swanson's notice of intent merely stated, "The applicable Standard of Practice and Care was breached as evidenced by the failure to do those things set forth in Section II above." Regarding what actions should have been taken to comply with the standard of care, the notice of intent simply stated, "The action that should have been taken to achieve compliance with the Standard of Care should have been those things set forth in Section II above." And with respect to proximate cause, the notice of intent stated:

"As a result of the defendants' gross and blatant negligence, Heather Swanson sustained injury to the main artery in her body, necessitating a surgical repair that rendered this teenager permanently scarred and disfigured, along with intermittent diarrhea and abdominal pain."

Swanson's notice of intent is very similar in its deficiencies to the notice of intent in *Miller* [*v Malik*, 280 Mich App 687, 696-697; 760 NW2d 818 (2008)]. The notice of intent here was similarly inadequate to meet the requirement of MCL 600.2912b(4)(e). Here, although Swanson stated that "defendants' gross and blatant negligence" caused "injury to the main artery in her body," nowhere did she state *how* the defendants were negligent other than by breaching the enumerated standards of care. In other words, there is no indication in the notice of intent how defendants caused or could have avoided the injury to Swanson's artery. Like in *Miller*, Swanson did identify certain duties in the standard of care portion of the notice of intent, but she failed to describe the *manner* in which any failure on the part of defendants to perform any of these duties caused Swanson's injury.

For example, although Swanson asserted that defendants had a duty to appropriately evaluate Swanson, including "assessing the abdomen and abdominal structures in order to determine the appropriate amount of force needed to perform a laparoscopy," Swanson never explained *how* determining the appropriate amount of force would have prevented injury to the aorta, nor did she allege that Dr. Rowe actually used anything other than the appropriate amount of force. Similarly, Swanson did not explain *how* identifying "the location of the aorta and other anatomical structures" would have prevented injury to the aorta. Further, Swanson failed to explain *how* Dr. Rowe was supposed to "protect vital structures, such as the aorta from surgical injury."

Thus, "Although the instant notice of intent may conceivably have apprised [defendants] of the nature and gravamen of [Swanson's] allegations, this is not the statutory standard; § 2912b(4)(e) requires something more." The mere correlation between alleged malpractice and an injury is insufficient to show proximate cause. We therefore conclude that the notice of intent was not sufficiently stated to put the defendants on statutorily sufficient notice of the nature of the claim.[7]

Accordingly, the *Swanson* majority held that the trial court erred by denying defendants' motion for a JNOV and reversed the verdict against defendants.

Judge O'CONNELL, dissenting, stated that he believed *Miller* was wrongly decided and that the notice of intent filed in the instant case was sufficient.[8]

Swanson sought leave to appeal in the Michigan Supreme Court. And in December 2009, the Supreme Court entered an order vacating the judgment in *Swanson* and remanding "for reconsideration of the parties'

---

[7] *Id.* at 5-6 (citations omitted) (alterations other than addition of citation in original).

[8] *Id.* at 2 (O'CONNELL, J., dissenting).

appeals in light of this Court's decision in *Bush v Shabahang*, 484 Mich 156 (2009), and MCL 600.2301."[9]

### IV. NOTICE OF INTENT

### A. STANDARD OF REVIEW

Defendants argue that the trial court clearly erred by denying their motions for JNOV or a new trial because Swanson's notice of intent failed to sufficiently specify proximate cause by failing to detail the manner in which defendants' alleged breach of the standard of care factually and foreseeably caused injury to Swanson's aorta. Whether a notice of intent complies with the requirements of MCL 600.2912b is a question of law that this Court reviews de novo.[10]

### B. *BUSH v SHABAHANG*

In *Bush*, the plaintiff filed a notice of intent several days before the expiration of the period of limitations.[11] The plaintiff then filed a medical malpractice action 175 days after serving notice on the defendants.[12] The defendants sought summary disposition, arguing that the notice of intent did not comply with MCL 600.2912b and that the plaintiff had failed to wait the required 182 days before filing the complaint.[13] The trial court granted summary disposition in favor of several defendants, but denied summary disposition for other defendants, and held that the complaint had not been filed

---

[9] *Swanson*, 485 Mich 1008.

[10] *Jackson v Detroit Med Ctr*, 278 Mich App 532, 545; 753 NW2d 635 (2008).

[11] *Bush*, 484 Mich at 162.

[12] *Id.*

[13] *Id.*

prematurely.[14] This Court affirmed in part, reversed in part, and remanded.[15]

On appeal, the Supreme Court first considered whether the filing of a defective notice of intent tolls the period of limitations for a medical malpractice action.[16] The Court concluded that, pursuant to the clear language of MCL 600.2912b, which requires that a plaintiff file an notice of intent not less than 182 days before a medical malpractice action is commenced, and MCL 600.5856(c), which provides that the period of limitations is tolled "[a]t the time notice is given in compliance with the applicable notice period under section 2912b," if the plaintiff complies with the applicable notice period before commencing a medical malpractice action, the period of limitations is tolled.[17] Thus, the filing of a timely notice of intent tolls the period of limitations in a medical malpractice action "despite the presence of defects in the [notice of intent]."[18]

The Court then proceeded to consider what consequences attach to the filing of a defective notice of intent.[19] The Court reviewed the legislative history of the statute creating notices of intent and concluded that the Legislature did not intend that a defective notice of intent be grounds for a dismissal with prejudice pursuant to MCL 600.2912b.[20] Thus, the Court found it appropriate to consider other relevant statutory provisions "to see if other appropriate remedies

---

[14] *Id.* at 163.

[15] *Bush v Shabahang*, 278 Mich App 703, 727; 753 NW2d 271 (2008).

[16] *Bush*, 484 Mich at 164.

[17] *Id.* at 169.

[18] *Id.* at 170.

[19] *Id.*

[20] *Id.* at 172-175.

exist . . . ."[21] The Court then found applicable MCL
600.2301, which provides:

> The court in which any action or proceeding is pending,
> has power to amend any process, pleading or proceeding in
> such action or proceeding, either in form or substance, for
> the furtherance of justice, on such terms as are just, at any
> time before judgment rendered therein. The court at every
> stage of the action or proceeding shall disregard any error
> or defect in the proceedings which do not affect the
> substantial rights of the parties.

The Court reasoned that giving notice of intent "is a
part of a medical malpractice 'proceeding' " and there-
fore that MCL 600.2301 "applies to the [notice of
intent] 'process.' "[22] The Court therefore held that MCL
600.2301 "may be employed to cure defects in [a notice
of intent]"[23] and stated as follows regarding the use of
MCL 600.2301 in such a manner:

> We recognize that § 2301 allows for amendment of
> errors or defects, whether the defect is in form or in
> substance, but only when the amendment would be "for
> the furtherance of justice." Additionally, § 2301 mandates
> that courts disregard errors or defects when those errors or
> defects do not affect the substantial rights of the parties.
> Thus, the applicability of § 2301 rests on a two-pronged
> test: first, whether a substantial right of a party is impli-
> cated and, second, whether a cure is in the furtherance of
> justice. If both of these prongs are satisfied, a cure will be
> allowed "on such terms as are just." Given that [notices of
> intent] are served at such an early stage in the proceedings,
> so-called "defects" are to be expected. The statute contem-
> plates that medical records may not have been turned over
> before the [notice of intent] is mailed to the defendant.
> Defendants who receive these notices are sophisticated

---

[21] *Id.* at 176.

[22] *Id.* at 176-177.

[23] *Id.* at 177.

health professionals with extensive medical background and training. Indeed, these same defendants are allowed to act as their own reviewing experts. A defendant who has enough medical expertise to opine in his or her own defense certainly has the ability to understand the nature of claims being asserted against him or her even in the presence of defects in the [notice of intent]. Accordingly, we conclude that no substantial right of a health care provider is implicated. Further, we hold that the second prong of the test, which requires that the cure be in the furtherance of justice, is satisfied when a party makes a good-faith attempt to comply with the content requirements of § 2912b. Thus, only when a plaintiff has not made a good-faith attempt to comply with § 2912b(4) should a trial court consider dismissal of an action without prejudice.[24]

The Court then examined the notice of intent at issue in the case before it and agreed with this Court that, while the vast majority of the notice of intent complied with MCL 600.2912b(4), portions of it were defective.[25] But the Court held that those defects could be cured by amendment pursuant to MCL 600.2301 and thus affirmed this Court's decision in part, reversed it in part, and remanded the matter to the trial court for further proceedings.[26]

### C. ANALYSIS ON REMAND

On remand in this case, this Court must reexamine the notice of intent in light of the Supreme Court's decision in *Bush* and MCL 600.2301. As stated earlier, the Court explained in *Bush* that "the applicability of § 2301 rests on a two-pronged test: first, whether a

---

[24] *Id.* at 177-178 (citations omitted).

[25] *Id.* at 178-180.

[26] *Id.* at 180-181, 185.

substantial right of a party is implicated and, second, whether a cure is in the furtherance of justice."[27]

With respect to the substantial-right prong of the test, the *Bush* Court explained that in medical malpractice cases, the defendants who receive the notice of intent "are sophisticated health professionals with extensive medical background and training."[28] And, according to the Court, "[a] defendant who has enough medical expertise to opine in his or her own defense certainly has the ability to understand the nature of claims being asserted against him or her even in the presence of defects in the [notice of intent]."[29] Thus, because defendants here are health care providers, like the *Bush* defendants, no substantial rights are implicated.

Turning to the furtherance-of-justice prong, the *Bush* Court explained that this prong is satisfied "when a party makes a good-faith attempt to comply with the content requirements of § 2912b. Thus, only when a plaintiff has not made a good-faith attempt to comply with § 2912b(4) should a trial court consider dismissal of an action without prejudice."[30]

We continue to believe that Swanson's notice of intent was defective because it failed to meet the minimum requirements of MCL 600.2912b(4)(c), (d), and (e).[31] With respect to breach of the standard of care,[32] Swanson's notice of intent merely stated, "The

---

[27] *Id.* at 177.

[28] *Id.* at 178.

[29] *Id.*

[30] *Id.*

[31] Judge O'CONNELL is of the opinion that the notice of intent was sufficient, and for the reasons stated by the trial court, both Judges O'CONNELL and OWENS are of the opinion that the affidavit of merit was sufficient.

[32] MCL 600.2912b(4)(c).

applicable Standard of Practice and Care was breached as evidenced by the failure to do those things set forth in Section II above." Regarding what actions should have been taken to comply with the standard of care,[33] the notice of intent simply stated, "The action that should have been taken to achieve compliance with the Standard of Care should have been those things set forth in Section II above." And with respect to proximate cause, the notice of intent failed to describe the *manner* in which any failure on the part of defendants caused Swanson's injury.[34]

However, despite these defects, Swanson did explain the factual basis for her claim[35] and alleged numerous standards of practice or care that she deemed applicable to defendants' conduct.[36] Notably, Swanson's notice of intent alleged that the applicable standard of care required defendants to, among other things, "appropriately evaluate [Swanson], including but not limited to, assessing the abdomen and abdominal structures in order to determine the appropriate amount of force needed to perform a laparoscopy"; "appropriately identify the location of the aorta and other anatomical structures prior to placing the veress needle . . . [and] the trocar;" and "protect vital structures, such as the aorta from surgical injury."

In *Bush*, although acknowledging arguably more egregious defects in the notice of intent,[37] the Court

---

[33] MCL 600.2912b(4)(d).

[34] MCL 600.2912b(4)(e).

[35] MCL 600.2912b(4)(a).

[36] MCL 600.2912b(4)(b).

[37] In *Bush*, with respect to defendant West Michigan Cardiovascular Surgeons, the plaintiff's notice failed to adequately address the standard of care under a direct theory of liability for failure to properly train or hire, failed to state how West Michigan Cardiovascular's hiring and

nevertheless held that the plaintiffs had made a good-faith attempt to comply with the content requirements of MCL 600.2912b and that the defects did not warrant dismissal of the claim.[38] According to the *Bush* Court, "These types of defects fall squarely within the ambit of § 2301 and should be disregarded or cured by amendment."[39]

Thus, looking at Swanson's notice as a whole and comparing its defects to those in *Bush*, we conclude that her notice of intent was a good-faith attempt to comply with the content requirements of MCL 600.2912b. Therefore, dismissal of her claims was not warranted. With respect to the appropriate remedy, we further conclude that, in light of our conclusion regarding the trial court's res ipsa loquitur instruction, discussed in part V, these defects should be disregarded.

### V. RES IPSA LOQUITUR INSTRUCTION

#### A. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's determination whether a jury instruction is applicable to the facts of the case.[40]

---

training practices violated the standard of care, failed to state which hiring practices or training methods it should have employed, and failed to state how those improper practices proximately caused the alleged injuries. *Bush*, 484 Mich at 179. And with respect to defendant Spectrum Health's nursing staff and physician assistants, the plaintiff's notice failed to state a separate standard of care for the nurses and physician assistants, failed to delineate the specific actions taken by the nursing staff or physician assistants that purportedly breached the standard of care, and failed to state the manner in which the identified breaches proximately caused the alleged injuries. *Id.* at 179-180.

[38] *Bush*, 484 Mich at 180.

[39] *Id.*

[40] *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006); *Bordeaux v Celotex Corp*, 203 Mich App 158, 168-169; 511 NW2d 899 (1993).

B. ANALYSIS

Michigan Model Civil Jury Instruction 30.05, the res ipsa loquitur instruction, states in pertinent part:

> If you find that the defendant had control over the *[body of the plaintiff / instrumentality which caused the plaintiff's injury]*, and that the plaintiff's injury is of a kind which does not ordinarily occur without someone's negligence, then you may infer that the defendant was negligent.

M Civ JI 30.05 also includes the following use note: "This instruction should be given only if there is expert testimony that the injury does not ordinarily occur without negligence, or if the court finds that such a determination could be made by the jury as a matter of common knowledge." Accordingly, the following conditions must be met for a plaintiff to invoke the res ipsa loquitur doctrine:

> (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;

> (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;

> (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff; and

> (4) [e]vidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.[41]

In order for the court to give a requested jury instruction, the requesting party must present sufficient evidence to warrant the instruction.[42]

At trial, both plaintiff and defendants presented expert witness testimony to explain how the injury to

---

[41] *Woodard v Custer*, 473 Mich 1, 7; 702 NW2d 522 (2005) (citations and quotation marks omitted) (alteration in *Woodard*).

[42] *Bordeaux*, 203 Mich App at 169.

Swanson's aorta could have occurred. Both Dr. Rowe and Laura Williams, the surgical technologist, testified that Dr. Rowe inserted the Veress needle and the trocar at the appropriate angle. Nevertheless, Swanson's expert, Dr. Hazen, testified that the injury must have occurred because Dr. Rowe improperly inserted an instrument (most likely the trocar) at the wrong angle. However, Dr. Hazen also admitted that injury to the aorta can occur during this type of laparoscopic surgery two times out of a thousand. Moreover, defendants' experts testified that Dr. Rowe performed Swanson's surgery within the applicable standard of care and that injury to the aorta is a known complication of a properly performed laparoscopic procedure. Specifically, defendants' two expert witnesses, Dr. Samuel McNeeley, Jr., and Dr. William Floyd, who are board-certified in obstetrics and gynecology, both testified that a laparoscopic procedure like that performed on Swanson is a "blind procedure" and confirmed that one of the known risks associated with such procedures is injury to blood vessels, including the aorta. Therefore, it is clear that the evidence did not support an instruction that Swanson's injury was of a kind that does not ordinarily occur without someone's negligence.

In this case, both defendants' experts and Swanson's expert, Dr. Hazen, testified that Swanson's injury was a known complication of laparoscopic surgery that can occur in the absence of any negligence on the part of the treating physician and indeed does occur up to two times out of a thousand without any negligence on the part of the treating physician. Since this type of injury is a known complication of laparoscopic surgery, and since this type of injury can occur without any negligence on the part of the treating physician, it is axiomatic that instructing the jury on the doctrine of res ipsa loquitur was an abuse of discretion. Given that this

error alone merits reversal, we need not address the parties' remaining arguments.

We reverse on the basis of the erroneous res ipsa loquitur instruction and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.