# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA MERCHAND,

        Plaintiff-Appellant/Cross-Appellee,

v

RICHARD L. CARPENTER, M.D.,

        Defendant-Appellee/Cross-
        Appellant

and

MID-MICHIGAN EAR, NOSE, AND THROAT,
P.C.,

        Defendant.

UNPUBLISHED
August 2, 2016

No. 327272
Ingham Circuit Court
LC No. 12-001343-NH

Before: OWENS, P.J., and BORRELLO and O'BRIEN, JJ.

O'BRIEN, J. (*dissenting*).

      I respectfully dissent. This medical-malpractice lawsuit arises out of a surgery performed by defendant, Richard L. Carpenter, M.D., on plaintiff, Patricia Merchand, in 2010. Plaintiff alleges that defendant negligently injured her hypoglossal nerve (HGN) during the removal of her submandibular gland. Plaintiff presented expert testimony that supported her theory that defendant negligently injured plaintiff's HGN during the surgery. Defendant presented expert testimony that supported his theory that he was not negligent and that plaintiff's injuries were a known complication of the surgery. The jury heard this conflicting testimony and returned a verdict of no cause of action. On appeal, plaintiff claims that the trial court abused its discretion in excluding evidence regarding eight to ten other malpractice cases against defendant, in excluding evidence regarding defendant's alleged criminal activity in Florida two or more years after plaintiff's surgery, in excluding evidence regarding the termination of defendant's employment from Mid-Michigan Ear, Nose, and Throat, P.C., and a variety of other evidence in

-1-

hopes of impeaching defendant's credibility.[1]  Because this evidence is irrelevant, more prejudicial than probative, and otherwise inadmissible, I would conclude that the trial court correctly excluded this evidence.  Accordingly, I would affirm the jury's verdict of no cause of action.

## I. OTHER-ACTS EVIDENCE

On appeal, plaintiff argues, and the majority concludes, that the trial court abused its discretion in excluding the testimony of Dr. Michael Morris, who was qualified as an expert, regarding numerous other malpractice allegations against defendant.[2]  I disagree with my colleagues' conclusion that "the testimony of Dr. Morris regarding the parallels between this case and records in plaintiff's past medical malpractice cases" "was admissible under [MRE] 404(b) to show defendant's scheme, plan, or system of creating medical records that did not accurately reflect his interactions with patients where surgeries resulted in serious complications" for several reasons.[3]

---

[1] A trial court's decision whether to admit evidence is reviewed for an abuse of discretion.  *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004).  "At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome."  *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).  So long as "the trial court selects one of these principles outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment."  *Id*.  See also *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006) (expressly adopting *Babcock*'s articulation of the abuse-of-discretion standard in civil cases).

[2] At the outset, it should be noted that I agree with my colleague's rejection of plaintiff's argument that defendant should have been subject to cross-examination as an expert even though he was not qualified as an expert and did not provide expert testimony.  Plaintiff's claim that a new trial is required because "Defendant was paraded before the jury as an 'expert' surgeon" is not supported in fact or law.  Additionally, plaintiff certainly could have objected to testimony regarding defendant's medical background but apparently chose not to.  Nevertheless, because this specific conclusion had no bearing on the outcome of this appeal, my agreement in this regard is largely irrelevant.

[3] As the majority recognizes, "[i]t is not clear from the record under which rule of evidence plaintiff sought to admit Dr. Morris's testimony at trial."  It should be made clear that plaintiff did *not* argue that Dr. Morris's testimony in this regard was admissible for system, plan, or scheme purposes before the trial court.  At best, plaintiff merely referenced non-character purposes for admitting evidence in several briefs before the trial court, stating on more than one occasion as follows:  "Evidence can be offered under MRE 404(b) for other purposes such as motive, opportunity, intent, preparation, scheme, plan or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material."  Notably, these mere references were made only in relation to licensing and criminal allegations against defendant and *never* in relation to other malpractice allegations.  In fact, plaintiff's response to defendant's

First, this testimony is irrelevant. *Lewis v LeGrow*, 258 Mich App 175, 208; 670 NW2d 675 (2003) (providing that character evidence is admissible for non-character purposes so long as it satisfies several requirements, one of which is that the evidence is relevant). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. In concluding that Dr. Morris's testimony "regarding the parallels between this case and records in plaintiff's past medical malpractice cases" is relevant, my colleagues explain as follows:

> In the instant case, the other acts evidence offered by plaintiff tends to show that defendant has a scheme, plan, or system of recordkeeping that severs any potential link between his surgery and the patient's post-operative complications by failing to chart them. If defendant's system is to omit mention of complications and patients' complaints to insulate himself from liability, this has the tendency of calling into question defendant's position that plaintiff's surgery and post-operative recovery were unremarkable, and supporting plaintiff's theory that the post-operative symptoms she experienced suggested an injury to her HGN.

In my view, an expert's testimony regarding defendant's allegedly inaccurate recordkeeping does not have the tendency to make the existence of any fact that is of consequence to the determination of this action more probable or less probable than it would be without that testimony. Stated simply, defendant's recordkeeping is not at issue in this case.[4] Rather, it is his ability to perform what the majority describes as a "routine removal of plaintiff's right submandibular gland" that is at issue. Whether or not defendant negligently injured plaintiff's HGN in doing so is not made more or less probable based on his alleged recordkeeping deficiencies.[5] Had plaintiff, for example, pursued recovery under a theory that

motion in limine to exclude evidence regarding other malpractice allegations, including the attached brief, only references MRE 404(b) once, when she indicates that "[t]he court [in *Heshelman v Lambardi*, 183 Mich App 72, 82; 454 NW2d 603 (1990)] held that evidence of prior malfeasance by a witness is admissible only under very specific circumstances for a very specific reason pursuant to MRE 608(b) and MRE 404(b)." That is the *only* reference to MRE 404(b) with respect to the other malpractice allegations. Despite plaintiff's failure to make any cognizable argument under MRE 404(b) and the uncertainty as to which rule of evidence plaintiff sought to admit this testimony before the trial court, the majority nevertheless concludes that the trial court abused its discretion in excluding it under MRE 404(b), and I find such a conclusion troublesome.

[4] To be clear, plaintiff does not claim that defendant's failure to adequately record surgery complications or post-operative symptoms played any role in her injury. Her claim is clear— defendant negligently injured her HGN *during* the surgery at issue.

[5] The majority apparently acknowledges this lack of relevancy: "The fact that defendant has been sued for medical malpractice in the past . . . does not make it more or less likely that he committed malpractice in the instant case." While this conclusion was reached in reference to plaintiff's argument that defendant should be cross-examined as an expert without being qualified as an expert, I see no reason why the same conclusion does not apply with respect to

involved defendant's failure to properly recognize complications or properly address post-operative symptoms, my conclusion may well have been different. But, she did not. Rather, plaintiff's claim is straightforward—it is her position that defendant negligently injured her HGN *during* the surgery, and both parties presented conflicting evidence as to whether that was what actually occurred.[6]

Secondly, assuming arguendo, any relevancy is substantially outweighed by the danger of unfair prejudice. *Lewis*, 258 Mich App at 208 (providing that character evidence is admissible for non-character purposes so long as it satisfies several requirements, one of which is that the evidence is not unfairly prejudicial). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. In concluding that Dr. Morris's testimony "regarding the parallels between this case and records in plaintiff's past medical malpractice cases" was not unfairly prejudicial, my colleagues explain as follows:

> Here, the other acts evidence has substantial probative value in showing that defendant has a scheme or plan when it comes to charting that minimized his exposure to liability by not recording patients' post-operative complaints. Arguing to the contrary, defendant asserts that the probative value of admitting the records under [MRE] 404(b) is limited, given defendant's admission that he occasionally makes charting errors and the testimony at trial establishing that plaintiff experienced various post-operative complications. Admitting to occasional charting errors is one thing; having a "scheme, plan, or system" that insulates one from liability is another. Fairness and accuracy demands that the jury be presented with sufficient evidence to determine which it is. In addition, defendant always has the option of requesting an appropriate limiting instruction. MRE 105; *Lewis*, 258 Mich at 208.

It is my belief that any probative value of Dr. Morris's testimony as to the existence of any fact of consequence to the determination of this action was substantially outweighed by the danger of unfair prejudice in allowing an expert to testify regarding a variety of other allegations of malpractice against defendant. As an example, plaintiff sought to admit Dr. Morris's

the majority's relevancy analysis under MRE 404(b). The fact that these malpractice cases also allegedly reflect similar recordkeeping tendencies does not, in my view, render them any more relevant than they ordinarily are.

[6] Importantly, we should not overlook the fact that plaintiff was permitted to present a substantial amount of testimony portraying defendant's recordkeeping practices in this case as insufficient. Plaintiff testified that she informed defendant of a variety of complications and post-operative symptoms that were not adequately recorded, and experts, both plaintiff's and defendant's, opined that defendant's recordkeeping lacked sufficient detail. Even defendant admitted that he possibly failed to record various complaints made by plaintiff. Frankly, plaintiff's position that defendant inadequately failed to record her complications and post-operative symptoms was made clear to the jury. Whether the jury found it credible was a determination for the jury, not this Court, to make.

-4-

testimony regarding a malpractice case in which defendant's nasal surgery allegedly resulted in blindness. It is unclear how the admission of this evidence would make the allegation that defendant negligently injured plaintiff's HGN during the surgery at issue more or less probable, but it is certainly clear that it would unfairly prejudice the jury against defendant. Furthermore, as defendant correctly recognizes, the admission of this evidence would require him to defend numerous malpractice allegations, all of which have nothing to do with what is at issue here—the issue of whether defendant negligently injured plaintiff's HGN during surgery.

Finally, I believe the majority has overstated the value of Dr. Morris's testimony in this regard. The following is the testimony, *in its entirety*,[7] that plaintiff sought to admit:

> *Q*. Doctor Morris, just so you know what we're doing right now, we're creating a separate record on some issues that were not addressed in front of the jury.
>
> Doctor Morris, have you had an occasion to become familiar with other patient care rendered by Richard Carpenter other than this case?
>
> *A*. Yes.
>
> *Q*. Tell me about how you've become aware of that.
>
> *A*. Through the process of being asked to review and reviewing other cases that were presented to me for review who were cared for by Doctor Carpenter.
>
> *Q*. Ju[s]t approximately how many cases have you reviewed involving Richard Carpenter's treatment of patients?
>
> *A*. Eight or 10.
>
> *Q*. And have any of those involved nerve injuries?
>
> *A*. Yes.
>
> *Q*. Just approximately how many of those?
>
> *A*. Two or three others.

---

[7] This is the entirety of the testimony that plaintiff admitted in a special record for purposes of appellate review. Had plaintiff intended to introduce additionally testimony or evidence regarding these other malpractice cases, I am unable to find any indication as to what that evidence might have been in the record. Surely it is plaintiff's, not this Court's, burden to identify that testimony and evidence.

*Q*. Okay. What type of nerve injury cases have you had a chance to review?

*A*. Nerve injuries of the neck, recurrent neck injuries, marginal mandibular nerve injuries. That's all I can think of.

*Q*. In one of those cases did it actually involve a submandibular gland and tumor removal surgery?

*A*. Yes.

*Q*. And in respect to all the different cases that you have reviewed concerning Richard Carpenter and the separate reports and office records, do you have any particular insight concerning his operative reports?

*A*. Yes.

*Q*. What is that, please?

*A*. That the operative report doesn't characterize any problem occurring during the surgery even if there's a complication that's significant.

*Q*. Is that information frequently left out of his operative reports?

*A*. Yes.

*Q*. How about with respect to his office records. Based on reviewing charts from, you know, many, many of his patients, do you have any observations concerning how he maintains his . . . charting in his office records for patient complaints?

*A*. Yes.

*Q*. What is that?

*A*. That what the patients complain about to him isn't recorded but they may see another doctor in his practice the next day or the next week and the other doctor records that information that had to be present on the day they saw Doctor Carpenter.

*Q*. Okay. And have you also gained any familiarity concerning just, you know, how meticulous Richard Carpenter's dissections are during surgeries?

*A*. Yes.

*Q*. What is the information you have learned?

*A*. That during some of his surgeries, operation on one part of the nose led to problems in another part of the nose that wasn't even involved with the

-6-

surgery, or an operation in those ended up causing blindness in a patient.  That wasn't part of the nasal surgery.  Or operations on the thyroid gland, removed the wrong side of the gland was another case.

> *Q*. Was that what you would describe as meticulous dissection?

> *A*. No.

> *Q*. Is that what would call careful attention to the details of the operation of the acts performed in the surgery?

> *A*. No.

The absence of that testimony, alone, is what the majority claims requires a new trial in this matter.  I strongly disagree.  First, the final four questions of this examination, i.e., the questions regarding "how meticulous Richard Carpenter's dissections are during surgeries," the details of the injuries allegedly sustained during those surgeries, and whether Dr. Morris "would call [it] careful attention to the details of the operation of the acts performed in the surgery" *have absolutely, unequivocally nothing to do with a system, plan, or scheme in recordkeeping*.  Furthermore, none of the testimony quoted above reflect what the majority, in apparently adopting plaintiff's theory, labels as "a 'scheme, plan, or system' that insulates one from liability[.]"  Rather, it reflects Dr. Morris's opinion about the adequacy of defendant's recordkeeping.  Additionally, and perhaps most importantly, allowing the admission of this testimony by Dr. Morris, who testified as an expert, requires and opens the door to an incredible amount of other evidence regarding these surgeries as well as all other surgeries performed by defendant that reflect on his recordkeeping.

If this evidence is admitted, it is my view that defendant will obviously be able to offer evidence in response to Dr. Morris's testimony in this regard.  Specifically, if testimony regarding defendant's recordkeeping during somewhere between eight and ten surgeries that allegedly resulted in malpractice is admissible, I would assume that testimony regarding defendant's recordkeeping during all other surgeries that did not result in malpractice allegations would also be admissible to refute the notion that his recordkeeping is faulty only in surgeries in which he wishes to cover up his own negligence.  Further, I would assume someone, other than Dr. Morris who apparently reviewed these records at plaintiff's counsel's request, will have to lay foundation as to their accuracy.  In reviewing the record, I am left with no indication nor evidence as to whether these other patients made or did not make the complaints that Dr. Morris opines they would have.  Additionally, based on the record, I discern no admissible evidence as to whether any of those other patients' injuries actually resulted from defendant's negligence.  Presumably, defendant will be able to challenge that with his own expert testimony, and I agree with the trial court's conclusion that the admission of both parties' attempts to prove or disprove these other medical malpractice allegations would be "highly prejudicial" and deny defendant any chance at "a fair trial."  Ultimately, it is my view that these other surgeries and malpractice allegations by Dr. Morris have no bearing on the issue of whether defendant was negligent in this

case. While I readily admit that witness credibility is always at issue, it cannot be disputed that all character evidence, especially irrelevant character evidence, impacts a witness's credibility.[8] That does not, however, render it automatically admissible.

Accordingly, I would conclude that the trial court did not abuse its discretion in excluding "the testimony of Dr. Morris regarding the parallels between this case and records in plaintiff's past medical malpractice cases" under MRE 404(b). Indeed, as we have held before, "close evidentiary question[s] ordinarily cannot be an abuse of discretion," *Lewis*, 258 Mich App at 200, and the evidentiary question in this case, at a minimum, was close. Based on that conclusion, I would affirm the jury's verdict of no cause of action.[9]

Although not addressed by the majority, my conclusion renders it necessary to briefly address other evidentiary challenges made by plaintiff before the trial court and again on

---

[8] Notably, the majority clearly concludes that "[t]he evidence of defendant's recordkeeping in past malpractice cases cannot be used to attack defendant's credibility . . . ." If Dr. Morris's testimony in this regard is not being admitted to negatively impact defendant's credibility, it is very difficult for me to ascertain what relevancy it has.

[9] While unnecessary in light of my conclusion with respect to MRE 404(b), I would also note that this testimony could have been excluded under MRE 608(b) as well. It appears undisputed that the evidence at issue constituted character evidence, MRE 608(a), and MRE 608(b) unequivocally prevents the admission of that type of extrinsic evidence:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

> The giving of testimony, whether by an accused or by another other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.

Dr. Morris's testimony is unequivocally extrinsic evidence offered to attack defendant's character. Thus, it is inadmissible under MRE 608(b). While cross-examination may, but is not required to, be permitted in this regard, Dr. Morris's testimony is simply inadmissible extrinsic evidence. Nevertheless, assuming that his testimony was admissible under MRE 608, it remained subject to MRE 402 and MRE 403, and, as stated above, both rules prevent its admission.

appeal.[10]  Plaintiff claims that defendant's "claimed disabilities, both physical and mental,"[11] "evidence of Defendant's former partners . . . who fired him for reasons including Defendant's lack of trustworthiness,"[12] and evidence regarding 2012 criminal allegations against defendant in Florida should have been presented to the jury[13].  In support of these claims, plaintiff states as follows:  "Under MRE 608(b), evidence of specific instances of conduct is admissible if probative of truthfulness or untruthfulness."  That is simply untrue.  In fact, MRE 608(b) provides, in pertinent part, *the exact opposite*:  "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may *not* be proved by extrinsic evidence."  (Emphasis added.)  While that subsection does provide that cross-examination *may* be permitted in this regard, it is within the trial court's discretion and subject to MRE 402 and MRE 403.  And, for similar reasons as those stated with respect to MRE 404(b) above, the trial court's decision to exclude this evidence did not constitute an abuse of discretion.[14]

---

[10] It should be noted that the type of evidence that plaintiff wishes to admit in this regard is completely unclear.  As this is not addressed by the majority, it is not clear how it will be handled on remand.

[11] Plaintiff alleged before the trial court that defendant suffered from a mental disability based only upon his deposition testimony.  Nothing else in the record supports this allegation, and plaintiff has not made any assertion that this alleged mental disability existed at the time of the surgery in this case.  Rather, as with the other evidence discussed on appeal, plaintiff simply sought to admit this evidence in hopes that it would render defendant's testimony less credible.

[12] Plaintiff claims that "Defendant's former partners at [Mid-Michigan Ear, Nose, and Throat, P.C.] fired him for reasons including Defendant's lack of trustworthiness."  This lack of trustworthiness apparently arose from defendant's violation of a recently implemented office policy, what plaintiff's counsel describes as "billing irregularities," and other reasons.  It was plaintiff's position that this evidence was admissible because defendant "opened the door" by testifying without objection that he served as Mid-Michigan Ear, Nose, and Throat, P.C.'s president in the past.

[13] Plaintiff describes this 2012 alleged criminal activity, which allegedly occurred two years after the surgery at issue in this case and was resolved by a nolo contendere plea, as "obtaining narcotics by fraud."  Even she admits, however, that "there is no similarity between the facts underlying Defendant's obtaining narcotics by fraud and the medical malpractice at bar." Nevertheless, she claims that we can assume "that Defendant had been abusing prescription narcotics for quite some time" and that this "chronic abuse of narcotics may have had an effect on his ability to perform Plaintiff's surgery."  This is an assumption I am not willing to make based on plaintiff's unsupported and self-serving hypotheses.  Plaintiff has not alleged that defendant was intoxicated, in any manner, during plaintiff's surgery.

[14] Plaintiff's position is simple, and is one that this Court and our Supreme Court have rejected time and time again.  Her position is that a variety of evidence against defendant, i.e., "evidence concerning . . . the underlying facts of a criminal prosecution for obtaining prescription narcotics by fraud, evidence concerning the fact that a reason he was discharged from his medical practice

## II.  RES IPSA LOQUITUR INSTRUCTION

I also disagree with my colleague's conclusion that the trial court did not abuse its discretion in instructing the jury on res ipsa loquitur.  This Court has unequivocally held that a res ipsa loquitur instruction is improper when the type of injury sustained is a known complication of the medical procedure at issue and can occur without any negligence on behalf of the treating physician.  *Swanson v Port Huron Hosp (On Remand)*, 290 Mich App 167, 185; 800 NW2d 101 (2010) ("Since this type of injury is a known complication of laparoscopic surgery, and since this type of injury can occur without any negligence on the part of the treating physician, it is axiomatic that instructing the jury on the doctrine of res ipsa loquitur was an abuse of discretion.").  Here, both plaintiff's and defendant's experts testified that nerve injury is a known complication of submandibular gland excision and could occur without any negligence on behalf of the treating physician.[15]  While it is true, as plaintiff and the majority point out, that the experts disagree as to whether it was defendant's negligence that caused the injury in this case, that, alone, is insufficient to support a res ipsa loquitur instruction.

My colleagues rely on *Wilson v Stilwill*, 411 Mich 587, 608; 309 Mich NW2d 898 (1981), for the "impl[ication] that even in the cases of a known and accepted complication, such as a post-operative infection, the circumstances surrounding the complication may give rise to an inference of negligence."  I cannot agree with that understanding of *Wilson*.  In my view, *Wilson* compels the opposite understanding.  As the Supreme Court stated in that case, "The mere occurrence of a post-operative infection is not a situation which gives rise to an inference of negligence when no more has been shown than the facts that an infection has occurred and that an infection is rare."  *Id*.  In this case, like in *Wilson*, plaintiff has shown only that an injury

---

was that the other physicians were unable to trust him, and evidence of his other botched surgeries on other patients," should be admissible to present "an accurate and fair picture of Defendant to the jury[.]"  It cannot be disputed that this evidence is character evidence, see generally MRE 404, and this evidence has absolutely no bearing on the jury's determination as to whether defendant negligently injured plaintiff's HGN while removing her submandibular gland.  Moreover, extrinsic evidence of specific instances of conduct is not admissible under MRE 608(b), and that is precisely the type of extrinsic evidence that defendant seeks to admit.

[15] Specifically, Dr. Morris, plaintiff's standard-of-care expert, testified as follows:

> *Q*.  Okay.  So everybody remembers [because this question was originally objected to], injury to those nerves, lingual nerve, hypoglossal nerve, marginal mandibular branch, are all recognized complications of a submandibular gland excision surgery, true?
>
> *A*.  True.

While Dr. Morris also opined that plaintiff's injury would not have occurred but for defendant's negligence in this case, I cannot ignore the fact that he admitted that it was a "recognized complication[.]"

occurred and that such an injury is rare absent negligence on behalf of the treating physician. Thus, as in *Wilson*, "plaintiffs have not met the threshold requirement for an inference of negligence[.]" *Id.*

Accordingly, I would conclude that the trial court abused its discretion in instructing the jury on res ipsa loquitur. However, in light of the jury's verdict, this instructional error was harmless.


/s/ Colleen A. O'Brien